## UNITED STATES *v.* JIM.

(*District Court, D. Washington, N. D.* August 29, 1891.)

1. EXCLUSION OF CHINESE—RATIFICATION OF TREATY.

   Act Cong. Sept. 13, 1888, § 1, provides that, "from and after the date of the exchange of ratifications of the pending treaty between the United States and his imperial majesty the emperor of China, * * * it shall be unlawful for any Chinese person * * * to enter the United States, except as hereinafter provided." Section 13 provides that any Chinese person convicted of being unlawfully in the United States, before a commissioner, may within 10 days appeal to the judge of the district court. *Held*, that section 13 did not depend upon the ratification of the treaty, but became effective from the date of the approval of the act.

2. SAME—EVIDENCE OF FORMER RESIDENCE.

   Where a Chinaman arrested for being in the United States unlawfully is identified as a man who has been in the United States for several years, and defendant testifies that he came to the United States long prior to the passage of the exclusion act, and his testimony shows a knowledge of places in the United States, and events which have occurred during the past 10 years, it is sufficient to overcome presumptions arising from the fact that he was found near the border line, and was a stranger to the officers who made the arrest.

At Law.

*P. H. Winston*, U. S. Atty., and *P. C. Sullivan*, Asst. U. S. Atty.

*A. R. Coleman* and *W. H. White*, for defendant.

HANFORD, J. The defendant is a Chinese laborer, arrested on suspicion of being a recent arrival in this country, and charged with being a person not lawfully entitled to enter or remain in the United States, upon which charge he was duly tried before Thomas Craney, United States commissioner at Coupeville, Island county, in this state, and convicted and sentenced to be deported to China, from which sentence he appealed to the judge of this court under the thirteenth section of the act of congress, approved September 13, 1888, entitled "An act to prohibit the coming of Chinese laborers to the United States," which section provides for an appeal in such cases in the following words:

"But any such Chinese person convicted before a commissioner of a United States court may, within 10 days from such conviction, appeal to the judge of the district court for the district."

The first section of the act referred to is as follows:

"That from and after the date of the exchange of ratifications of the pending treaty between the United States and his imperial majesty the emperor of China, signed on the 12th day of March, A. D. 1888, it shall be unlawful for any Chinese person, whether a subject of China or any other power, to enter the United States, except as hereinafter provided."

The act contains general provisions regarding the manner in which Chinese persons, not prohibited from coming, shall be allowed to enter the United States, and providing means for enforcing the laws prohibiting the immigration of Chinese laborers, including provisions for removal from the United States of any of the prohibited class who may, in violation of law, effect an entrance and be discovered upon our soil, and regulating the proceedings in such cases. The last section of the act reads as follows:

"Sec. 15. That the act entitled 'An act to execute certain treaty stipulations relating to Chinese,' approved May 6, 1882, and an act to amend said act, approved July 5, 1884, are hereby repealed, to take effect upon the ratification of the pending treaty, as provided in section 1 of this act."

From these provisions of the first and last sections, referring to the contemplated ratification of a treaty which has not taken place, a question arises as to whether any part of the statute ever went into effect, or is now an existing law.   There is no other statute or law allowing an appeal from the decision of a commissioner in cases of this class, or giving to the courts or judges of the United States power to grant a new trial after a regular trial and determination of a case before another tribunal or officer authorized by law to decide as to the right of a Chinese laborer to be or remain in the United States, and, if the statute referred to has no vitality, the decision of the commissioner appealed from in this case is final, or at least not subject to review in this court upon questions of fact.   It is my opinion, however, that every part of the act became effective from the date of its approval, except the particular provisions of the first and fifteenth sections, which are specially, by the provisions contained therein, made to depend for vitality upon the contingency of the ratification, at a future time, of the pending treaty.   The other parts of the statute are not of such a character as to be necessarily dependent upon any of the provisions of either the first or fifteenth section.   They can and do fit into the body of the general laws of this country, as well without as with the first and fifteenth sections, and are applicable to what remains of the laws relating to the subject of Chinese immigration, and contribute towards making the system complete and harmonious, notwithstanding the fact that by failure of the treaty the first and last sections remain and are nugatory.

It is my opinion, therefore, that an appeal to this court from the decision of the commissioner, and a trial *de novo*, are rights guarantied to this defendant by law; and I have, in accordance with this opinion, granted a full and fair trial.   The defendant, having the aid of counsel, which he did not have upon the former trial, has brought before me evidence of the most conclusive character, including the testimony of reputable and prominent citizens, by which he is identified as a man who has been for several years within the United States, which is sufficient, in my opinion, to rebut the presumption arising from the fact of his being found so near to British Columbia as the place at which he was arrested, and the fact of his being a stranger to the officers by whom he was arrested, and the magistrate and persons before whom his trial took place.   Among those who have thus identified him is a well-known citizen of Island county, who was called by the government as a witness against this and other defendants.   The defendant, in his own behalf, has testified that he came to the United States at a time prior to the passage of the first restriction act, and has never been out of the United States since his arrival; and by his testimony he shows that he possesses knowledge concerning places within the United States, and events which have occurred during the past 10 years, which I think tends to corrob-

orate his testimony as to the more important facts. The former trial was conducted, as all such trials must be, in a summary fashion; and considering that the defendant was ignorant of his rights, and of the necessity of producing evidence which could have been produced in his behalf on that trial, I think he is excusable for his failure to do so. From the evidence before me I am forced to the conclusion that there is not only a failure on the part of the government to prove that this man came into the United States unlawfully, but it is shown affirmatively and clearly, by unimpeached and reliable testimony, that he came to this country before it was made unlawful for a Chinese laborer to come, and that he has not been out of it since. Therefore it is the judgment of the court that the decision of the commissioner be reversed, and that the defendant be released from the custody in which he is now held.

Nine other cases of appeals, taken by Chinamen convicted before Commissioner Craney, have been heard in connection with this case, and from the testimony produced I find that each of them is equally entitled with the defendant in this case to be set at liberty, and it will be so ordered. The principles upon which this decision is based are applicable in each of them, although the particular facts in regard to the personal history of each man are somewhat different.