## UNITED STATES *v.* LEE HOY.

(*District Court, D. Washington, N. D.* December 15, 1891.)

CHINESE MERCHANTS—RE-ENTRY WITHOUT CERTIFICATE—DECISION OF COLLECTOR.

The presence of a Chinese merchant, otherwise entitled to be in the United States, is not rendered unlawful by the fact that upon his return from a visit to Canada the collector permitted him to land, upon the certificates of private persons and his own personal knowledge, without the viséd certificate required by section 6 of the amended exclusion act, (Act Cong. July 5, 1884;) since that section also provides that "the collector shall in person decide all questions in dispute with regard to the right of any Chinese passenger to enter the United States, and his decision shall be subject to review by the secretary of the treasury, and not otherwise."

At Law. Appeal by Lee Hoy from a conviction before a United States commissioner of being unlawfully in the United States. Reversed.

*P. H. Winston,* U. S. Atty.

*William H. White,* for defendant.

HANFORD, J. The defendant in this case came to the United States from China in the year 1880, and has made his home in this country ever since. For eight years after his arrival he belonged to the laboring class, and was employed as a cook. With the capital accumulated by saving his wages he purchased a stock of merchandise, and for upwards of three years past he has been a merchant at Port Angeles, in this state. There is no question as to his identity, nor as to any of the facts above stated. The defendant is as well known in the community where he lives as any other merchant there. He has frequently visited a relative at Victoria, but has never been out of the United States since his first arrival in 1880, except for the purpose of making said visits. In going to Victoria and returning he always traveled by regular passenger steam-boats, and always landed, on returning, with the knowledge and consent of the collector or an acting collector of customs at Port Townsend, his identity and occupation as a merchant being proven by a certificate given him by well-known prominent citizens acquainted with him. On the occasion of his last return from Victoria the acting collector of customs permitted him to land, upon the evidence of such certificates in part, but chiefly upon his own personal recognition of the man, and knowledge as to his residence and business, and he was allowed to go to Port Angeles as usual, and was not molested for a period of some two weeks thereafter, when he was arrested upon a charge of being a Chinese person not lawfully entitled to be or remain in the United States. Upon a hearing before a United States commissioner he was convicted, and a warrant for his deportation to China was issued. From the judgment of the commissioner he has appealed to the judge of this district, under the provisions of the thirteenth section of the act approved September 13, 1888, (25 U. S. St. 479.)

The only reason for supposing that this defendant is not lawfully in this country, or that he can be lawfully deported, is that, having been out of the United States, he returned without a certificate properly issued

and viséd according to the sixth section of the restriction act, as amended by the act of July 5, 1884, (23 U. S. St. 116.)

If the right of the defendant to land on the occasion referred to had been denied by the custom-house authorities, and if he now appeared before the court as an applicant for affirmative relief, so that a decision in his favor would operate as a mandate to compel the collector to re-open the gate for his admission to the country without presentation of the required certificate, my decision would be controlled by the recent decision of the circuit court of appeals for the ninth circuit, in the *Case of Lau Ow Bew*, 47 Fed. Rep. 641. But the decision of the collector was in favor of the right to land, and it is now a question whether the defendant can be lawfully banished from the country in which he has been domiciled for 11 years, and in which his property and business is situated. By reason of his being in the United States prior to the date on which the first restriction act went into effect the defendant's right to be in this country and to enjoy all the rights, privileges, and immunities allowed to citizens and subjects of the most favored nations is expressly guarantied, both by a national treaty and by acts of congress not yet abrogated or repealed; and, by reason of being a merchant, the same rights are accorded to him by the second section of the act of September 13, 1888. The statute providing for the arrest and deportation of Chinese persons expressly requires that there shall be a judicial inquiry, and that a Chinese person can be sent out of the country only after being convicted and "adjudged to be one not lawfully entitled to be or remain in the United States." To determine this case adversely to the defendant something more is required than to find that the manner of his coming into the country was unlawful by reason of his failure to produce and exhibit to the collector the legal evidence to prove his right. It must be found that he is not lawfully entitled to remain in the United States. The several statutes referred to contain provisions requiring the collector of customs to examine the lists of all passengers coming into the country by vessels from foreign countries, and confer upon him power, as the agent of the government, to decide as to the right of a Chinese person to land from such vessel. Section 12 of the act of September 13, 1888, reads as follows:

"Sec. 12. That before any Chinese passengers are landed from any such vessel the collector or his deputy shall proceed to examine such passengers, comparing the certificates with the lists and with the passengers; and no passenger shall be allowed to land in the United States from such vessel in violation of law; and the collector shall in person decide all questions in dispute with regard to the right of any Chinese passenger to enter the United States, and his decision shall be subject to review by the secretary of the treasury, and not otherwise."

In making his decision in this case, the collector was guided by regulations and instructions promulgated by his superior officer, the secretary of the treasury, and especially by a circular dated July 3, 1890, from which the following is an extract:

"*Second.* Chinamen, who are not laborers, and who may have heretofore resided in the United States, are not prevented by existing law or treaty from returning to the United States after visiting China or elsewhere. No certificates or other papers, however, are issued either by the department or by any of its subordinate officers, to show that they are entitled to land in the United States, but it is suggested that such persons should, before leaving the United States, provide themselves with such proofs of identity as may be deemed proper, showing that they have been residents of the United States, and that they are not laborers, so that they can present the same to and be identified by the collector of customs at the port where they return."

It is impossible for merchants of Chinese nativity, established and domiciled within this country, to obtain from the government of China or any other country certificates meeting the requirements of the sixth section of the restriction act as it has been amended, for which reason the treasury department has interpreted that law as being inapplicable to them, and has made the above regulation to enable them to go and return, without opening a way for others to gain admittance fraudulently. Pursuant to this regulation, many merchants of this class have been permitted to go out of the country temporarily with the assurance from United States officials of the right to return, and have been permitted by United States officials to return without having certificates issued to them by any government. All such merchants who are now within the United States are liable to be arrested and banished if the law requires that this defendant be so treated. I am not inclined to hesitate about enforcing the law, even if it be harsh, but it is my duty to carefully inquire and find authority for it in the law before making a decision which may work ruin to a large number of unoffending persons. The defendant did not return from his visit to Victoria clandestinely or fraudulently. Every question as to his right to return has been once passed upon by a representative of the United States, specially authorized and required to make careful inquiry as to the facts, and decide such questions. There is no law providing for a review of any decision of that officer in such a case by any court; on the contrary, the law does require that the collector's decision shall not be subject to review except by the secretary of the treasury. Of course, if any officer of the executive branch of the government misconstrues or misapplies the law, his action based upon such error may be annulled or disregarded by a court in any case coming within its jurisdiction. But by a line of decisions of the supreme court a general principle has become fixed as part of our national jurisprudence. It is this: When an officer or special tribunal is expressly empowered to receive and examine proofs, and decide any question of fact necessary to be determined in the course of administration of the government or execution of the laws, and no power of review is given to the courts by any statute, the finding of facts made by such officer or special tribunal pursuant to such authority is conclusive upon the parties affected and upon the courts, unless it can be impeached for fraud. Upon this principle the courts are precluded from reopening a case once passed upon by such an authorized officer or special tribunal for the mere purpose of inquiring whether or not the decision was predi-

cated upon legal or sufficient evidence. *Johnson* v. *Towsley*, 13 Wall. 72; *Steel* v. *Smelting, etc., Co.*, 106 U. S. 451, 1 Sup. Ct. Rep. 389; *Baldwin* v. *Stark*, 107 U. S. 465, 2 Sup. Ct. Rep. 473. For the reasons above given I conclude—*First*, that the defendant is not in fact one of the class of persons not lawfully entitled to remain in the United States; *second*. That, having been permitted by a collector of customs to land, after a temporary absence from the United States, without fraud on his part, the defendant cannot be lawfully sent out of the United States because of a mere error of a collector in not exacting legal evidence of the facts as to his identity and the nature of his business. In my opinion, the law does not authorize, but forbids, the execution of the warrant issued by the commissioner in this case. It is the judgment of this court, therefore, that the order and judgment of the commissioner be reversed. The United States attorney having signified a desire to have my decision reviewed by the court of appeals for this circuit I will not discharge the defendant, but will admit him to bail, upon a recognizance with sureties, conditioned for his appearance at the next term of this court, and to abide the final determination of this case after the decision of the appellate court.