### UNITED STATES v. LONG HOP.[1]

#### (District Court, S. D. Alabama. February 8, 1892.)

1. CHINESE EXCLUSION—ACT OF 1888 OPERATIVE.
    The Chinese exclusion act of September 13, 1888, (25 St. at Large, p. 476,) has a field of operation despite the nonratification of the proposed treaty of March 12, 1888, between the United States and China, and is

[1]Reported by Peter J. Hamilton, Esq., of the Mobile, Ala., bar.

now in force excepting sections 2-4 and 15. U. S. v. Jim, 47 Fed. Rep. 431, followed.

2. SAME—PROCEDURE UNDER EARLIER ACTS.
The Chinese exclusion acts of 1882 and 1884 provided no procedure, and it rested with the president to direct the course to be pursued in removing a Chinese person found to be unlawfully in this country.

3. PRACTICE—RETURN OF PROCESS UNDER EXCLUSION ACTS.
In general, process is not returnable in a different district from that of its issue, but the Chinese exclusion act of 1888 alters this rule so far as relates to inquiry into the right of a Chinese person to be in the United States.

4. EVIDENCE—PASSENGER LIST.
Evidence of the contents of a ship list of Chinese passengers is inadmissible unless the list is shown to be authoritative, and a certified copy produced.

5. CONSTITUTIONAL LAW—DUE PROCESS UNDER EXCLUSION ACTS.
Under the Chinese exclusion acts, due process of law requires that the United States, when prosecuting, should show that the defendant is unlawfully in this country, and not that he should show a right to be here.

Appeal by Long Hop, a Chinese person, from commissioner's order of committal, for being unlawfully in the United States. Defendant discharged.

M. D. Wickersham, U. S. Dist. Atty.

Browne & Tucker, for defendant.

TOULMIN, District Judge. My opinion is that the act of September 13, 1888, became a law from and after the date of its approval, and that section 13 of that act became effective from that date. Parts of the act were made to depend upon the ratification of the pending treaty relating to Chinese, and, as that ratification has not taken place, there is no field of operation for them. They are sections 2-4 and 15. The law exists, but there is nothing for it to operate on. But the rest of the act, including section 13, has a field of operation. It is not necessarily dependent upon the provisions of either the first or fifteenth sections. Section 5 provides that from and after the passage of the act no Chinese laborer shall be permitted, after having left the United States, to return thereto, except under certain conditions thereinafter stated. Judge Hanford, of the district court of Washington, in his opinion in the case of U. S. v. Jim, 47 Fed. Rep. 431, has so clearly expressed his views on the subject, and in them I so fully concur, that I adopt what he there says as my opinion on the question now under consideration. Judge Hanford is sustained by Judge Wheeler, of the district court of Vermont, and by Judge Swan, of the district court of Michigan, in cases reported in 47 Fed. Rep. 433, (In re Mah Wong Gee,) and 878, (U. S. v. Chong Sam,) and I have found no contrary ruling.

But, besides this, if section 13 of the act of September 13, 1888, is not in force, then the proceeding under which defendant has been tried and convicted is null and void, and, while the result would be a dismissal of the appeal, a habeas corpus would lie, and the defendant be discharged. There is no authority elsewhere to be found in the statutes for such a proceeding as that taken in this case. There is no other statute that I have found that authorizes a warrant to

be issued upon complaint under oath by any justice, judge, or commissioner of any United States court, returnable before any justice, judge, or commissioner, or before any United States court, and that provides for a conviction of the person found unlawfully in the United States. The former acts simply provided for the removal of a Chinese person found unlawfully in the United States after being brought before some justice, judge, or commissioner, and found to be one not lawfully entitled to be in the United States. No mode of proceeding was prescribed, and no process provided for upon which said removal should be made. Clearly, under the acts of 1882 and 1884, the president alone, as the chief executive of the government, had the authority to prescribe and direct the proceeding and the mode of procedure in the removal of the person so unlawfully found in the United States. And, again, if the arrest was to be made under the process of any court or officer, such process could only be executed within the jurisdiction of such court or officer, and made returnable there. In this case the complaint was made before a United States court commissioner in Louisiana, and a warrant issued by him returnable before a United States court commissioner in Alabama, and directed to be executed by the marshal in Alabama. Now, I take it that a commissioner in Louisiana, independently of the act of September 13, 1888, would have no authority to issue a warrant to be executed in Alabama, and be made returnable before a commissioner in Alabama. I am sure it would not be contended that this court, or the judge thereof, could here issue process to be executed and made returnable before the district court or judge in Louisiana; and it would hardly be contended that a commissioner has greater powers than the court from which, it may be, he receives his commission and authority. But the act of September 13, 1888, by giving it a liberal construction, obviates all this. Congress, obviously seeing the casus omissus existing under the former legislation on the subject, has provided for it in the act of September 13, 1888. Without that act this proceeding must fail. Being of opinion, then, that the defendant has a right of appeal, the motion to dismiss the appeal in this case is denied.

I will now briefly consider the merits of the case on the proof submitted. The effect of a conviction of the defendant is to deprive him of his liberty in this country, and he cannot be convicted and removed without its being shown that he is unlawfully here. If the evidence fails to establish beyond a reasonable doubt that he is unlawfully in the United States, then the judgment of the commissioner must be reversed, and the defendant be discharged. Objection is made to certain parts of witness Brodie's testimony as illegal and inadmissible. The testimony objected to includes some hearsay, which, however, is not material, and a statement that the witness saw defendant's name on a list of 56 Chinese at New Orleans in transit through from San Francisco to Cuba. The objection to the testimony about the list is well taken (1) because it is not shown who made the list; that it was an authorized list; that it was the list required by law to be made by the customs officials at San Francisco on the arrival of the Chinese there, or the list of the shipmaster re-

quired by law to be made; and (2) because, if it was either of such lists, a certified copy of the same should have been produced, as the only legal evidence of the contents thereof in the absence of the original. While the witness Brodie, in his testimony, says that he is confident the defendant was one of the 56, he qualifies this statement by saying it is his opinion that he was, but that he cannot positively swear that he was. Now, excluding the illegal testimony referred to, the substance of the evidence in the case is that the defendant was in the United States for many years, at least six or eight, before the passage of the act of September 13, 1888, and was doing business in New Orleans, and that he left New Orleans, saying to two or three of the witnesses that he was going to China. The testimony as to the time when he left New Orleans is not harmonious. Some of the witnesses say that he sold out his business,—that of a laundry,—and left New Orleans in the spring of 1890; others say that it was in 1889; and one of them, the man who purchased the laundry, testified that it was about a year ago, which would fix the time about the last of 1890, or early in 1891. The testimony is without conflict that he was in New Orleans in May or June, 1891, and has been there and in Mobile ever since that time. It appears that, when he left New Orleans, he said he was going to China, and one witness testifies that defendant told him last July that he sold his laundry to go to China in 1889; that he went to China in 1889, and came back to the United States in 1891. The defendant testifies that he did not go to China when he left New Orleans; that he went to California in 1890, and remained there until he returned to New Orleans, in May, 1891; and that he has not been out of the United States since he came here, more than 10 years ago. Certain it is that he did not go to China in 1889, as the proof is overwhelming that he was in New Orleans in 1889, and as late as the spring of 1890. Now, no one saw him leave the United States. No one saw him enter the United States on his return from China. No passenger list from the vessel on which he is supposed to have entered the United States as a passenger is produced. No list required by law to be kept by the customs officials at the port where he is supposed to have entered the United States is produced, and from which it could be ascertained if a Chinese person of his name had entered there. It was in the power of the government to have produced these lists or certified copies of them. The law requires them to be made and kept by the government officers, and it is presumed that they performed their duty in the premises. Now, the only evidence we have that tends to show that the defendant left the United States and went to China is that he left New Orleans, and said he was going to China; that he was absent some time from New Orleans, and returned there in 1891; and that, on his return, said to one of the witnesses that he went to China in 1889, and had just returned. Whatever his statements to the witness may have been, the proof is that he was in New Orleans in 1889, and as late as the spring 1890, and he could not have been in China at that time. But, as I have said, the defendant testifies that he did not go to China; and, as suggested by one of the counsel, a circumstance, small though it

be, corroborative of this statement of defendant, is the fact that he said nothing to his fellow countryman and old friend Charles Emanuel, when he met him in June, 1891, shortly after his return to New Orleans, about China, or that he had been to China.    It seems to me it would have been most natural for him to have spoken to his friend about their country if he had in fact just returned from it. Due process of law requires that the government should show that the defendant is unlawfully in the United States, and not that he should show a right to be here; but, whatever the truth may be, I cannot, from the evidence before me, say that he is in the United States unlawfully.    It is my judgment, therefore, that the decision of the commissioner must be reversed, and that the defendant be released and discharged; and it is so ordered.