## UNITED STATES *v.* GEE LEE.

*(Circuit Court of Appeals, Ninth Circuit. April 18, 1892.)*

1. ACT OF SEPTEMBER 13, 1888.

This act having been passed subject to the ratification of a treaty then pending between the United States and the emperor of China, which was never ratified, is not in force, except section 13 thereof.

2. APPEAL TO THE DISTRICT JUDGE.

The phrase "district judge of the district," in section 13 of the act of September 13, 1888, construed, and *held* as the equivalent of the "district court of the district," and a writ of error will lie from this court to the judgment thereof.

3. CHINESE MERCHANT.

A Chinese merchant domiciled in the United States, on his return thereto from a temporary absence therefrom, is not required to produce the certificate provided for in the act of July 5, 1884, in the case of persons first coming into the United States.

48 Fed. Rep. 825, affirmed.

*(Syllabus by the Court.)*

Error to the District Court of Washington.

At Law.

*Patrick H. Winston,* for plaintiff in error.

*Charles L. Weller,* (*Wm. H. White,* of counsel,) for defendant in error.

Before GILBERT, Circuit Judge, and DEADY and HAWLEY, District Judges.

DEADY, District Judge. On October 7, 1891, Gee Lee, *alias* Lee Hoy, was arrested and brought before a commissioner of the circuit court of

the United States, under section 13 of the act of September 13, 1888, (25 St. p. 479,) and charged with unlawfully entering the United States.

On the hearing the commissioner found the accused to be a native of China, who had entered the United States from the port of Victoria without a certificate showing that he was a person entitled to enter the United States, and ordered him deported.

Gee Lee appealed from the order of the commissioner to the district judge.

On March 3, 1892, the judge filed the following findings of fact:

"The defendant, Gee Lee, *alias* Lee Hoy, is a native of China; that he came to the United States from China in the year 1880, and has made his home in this country ever since. For the first eight years after his arrival he belonged to the laboring classes, and was employed as a cook.

"At the end of eight years he ceased to pursue the avocation of a cook, purchased a stock of merchandise, and for upwards of three years last past he has been a merchant at Port Angeles, in this state. He has frequently visited relatives at Victoria, B. C., but has never been out of the United States since his first arrival here in 1880, except for the purpose of making said visits, when he always traveled by the regular passenger steamboats, and always landed, on returning, with the knowledge and consent of the collector of customs, at Port Townsend. There is no question as to his identity. He is as well known at Port Angeles, the community in which he lives, as any other merchant there. In the month of September, 1891, he went to Victoria, B. C., to visit a sick relative. On the 1st day of October, 1891, he returned from Victoria as a passenger on the regular passenger steamer Geo. E. Starr, and was permitted to land by the collector of customs, partly upon certificates of his identity and occupation as a merchant living at Port Angeles, given him by well-known citizens of that place, but chiefly upon his own personal recognition of the man, and knowledge as to his residence and business at Port Angeles, as aforesaid. After the landing he was allowed to go to Port Angeles, and was not molested for a period of two weeks, when he was arrested upon the charge of being a Chinese person not lawfully entitled to be or remain in the United States. That at the time he entered the United States from the foreign country of British Columbia, to wit, October 1, 1891, he had no certificate, as provided by the sixth section of the restriction act, as amended by the act of July 5, 1884.

"The court concluded from these premises—'(1) That the defendant is not in fact one of the class of persons not lawfully entitled to remain in the United States; [by which I understand that he was lawfully entitled to so remain.]

"'(2) That, having been permitted by a collector of customs to land, after a temporary absence from the United States, without fraud on his part, the defendant cannot be lawfully sent out of the United States because of a mere error in a collector in not exacting legal evidence of the facts as to his identity and the nature of his business. In my opinion, the law does not authorize, but forbids, the execution of the warrant issued by the commissioner in this case. It is the judgment of this court, therefore, that the order and judgment of the commissioner be reversed.'"

In the opinion of the court which accompanied the findings of fact and conclusions of law the court appears to have assumed that section 12 of the act of September 13, 1888, is in force, and that consequently the action of the collector in admitting Gee Lee was final, and not reviewable by the court.

But we are of opinion that such section never went into force.

It occurs in a statute entitled "An act to prohibit the coming of Chinese laborers to the United States," the taking effect of which so far is made to depend upon the ratification of a treaty then pending between the United States and the emperor of China, which ratification had never taken place.

Particular provisions of the act may be in force, as not being within the purview thereof, as declared in section 1, as follows: "It shall be unlawful for any Chinese person, whether a subject of China or any other power, to enter the United States except as hereinafter provided."

Such is section 13 of the act, which provides for the arrest and deportation of "any Chinese person * * * found unlawfully in the United States," and under which this proceeding was instituted.

It follows that section 12 of the statute, which is wholly taken up with the future landing or excluding of Chinese passengers by the collector, is not in force, and his act in admitting or refusing Gee Lee to enter the United States is not final; but the truth of the matter may be inquired into in any appropriate judicial proceeding, of which *habeas corpus* and arrest for being unlawfully in the United States are two.

Section 13 of the act of 1888 contains this clause: "But any such Chinese person, convicted before a commissioner of a United States court, may, within ten days from such conviction, appeal to the judge of the district court for the district."

No express provision is made for an appeal from the judgment of the district judge in such a case.

Section 6 of the act of 1891, creating this court, provides that it "shall exercise appellate jurisdiction to review by appeal or by writ of error final decision in the district court * * * in all cases other than those provided for in the preceding section" of the act.

If, under the circumstances, the words "the judge of the district court for the district" can be held equivalent to the words "the district court for the district," a writ of error will lie from this court to review the judgment.

We are of the opinion that the statute should be so read. The learned judge of the district court, from the allowance by him of the writ of error, evidently so thought. Every argument of convenience and utility favors this conclusion. Uniformity of decision in a very important matter will thus be secured.

"Judge of the district court" and "district court" are not, strictly speaking, convertible terms. But they are so in a popular sense, and it is safe to assume that congress, in the use of the former phrase, in this connection, intended to give the party an appeal to the district court of the district.

Since the decision in the court below, the *Case of Lau Ow Bew*, 12 Sup. Ct. Rep. 517, has been decided by the supreme court, in which it is held that the certificate required by section 6 of the act of May 6, 1882, as amended by the act of July 5, 1884, does not apply to Chinese merchants domiciled in the United States, who, having left the country

v.50F.no.3—18

for temporary purposes, *animo revertendi*, seek to re-enter it on their re-
turn to their business and their homes, and is only applicable to "Chinese
residing in China, or some other foreign country, and about to come for
the first time into the United States for travel or business, or take up
their residence."

The claim that a Chinese merchant, long domiciled in the United
States, on seeking to re-enter the same after a temporary absence, should
be required to produce a certificate of the Chinese government, concern-
ing facts of which such government could not, in the nature of things, be
expected to have any knowledge, is fitly characterized by the chief jus-
tice as "unreasonable and absurd."

The ruling in *Lau Ow Bew* governs this case. The decision of the
district court, though given on a ground in which we do not concur, is
correct, and must be affirmed; and it is so ordered.