## UNITED STATES v. LOO WAY.

### (District Court, S. D. California. May 21, 1895.)

1. CHINESE—RIGHT TO ENTER UNITED STATES—DECISION OF COLLECTOR.

Act Sept. 13, 1888 (section 12), providing that the decision of the collector as to the right of any Chinese passenger to enter the United States should be subject to review only by the secretary of the treasury, was never in force, having been enacted subject to the ratification of a treaty then pending between the United States and China, which was never ratified, and therefore the right of a Chinese person to enter the United States may be tried in proceedings of arrest, though the collector has previously decided that he was entitled to enter.

2. SAME—CHINESE MERCHANTS.

Quaere. Whether a Chinaman, whose name does not appear in the firm designation, and where it is not shown that his interest appears in the business or partnership articles, is a "merchant," within the definition prescribed by Act Nov. 3, 1893.

3. SAME—RIGHT TO RETURN.

The right of a Chinaman to readmission to the United States on the ground that he has already been engaged as a merchant therein is governed by Act Nov. 3, 1893, though he departed from the country before that act was passed.

Proceedings by arrest to determine the right of Loo Way, a Chinaman, to remain in the United States.

George J. Denis, U. S. Atty.

M. L. Ward and E. J. Ensign, for defendant.

WELLBORN, District Judge. The defendant, Loo Way, was arrested at the city of San Diego, in this district, April 4, 1895, upon a complaint under oath, charging that said defendant, "on or about the 12th day of December, 1893, knowingly and unlawfully came into the United States from a foreign country, to wit, China, he, the said Loo Way, then and there being a Chinese laborer, and a person not entitled to enter the United States," and, after a hearing before S. S. Knoles, circuit court commissioner, who found the facts to be as charged in the complaint, was ordered to be removed from the United States to China. By an appeal, under section 13 of the act of congress of September 13, 1888, the case has been brought into this court. The evidence adduced upon the trial here establishes the following facts, to wit: The defendant is a native of China. He first came to the United States about the year 1878, and resided continuously in this country up to some time between the 26th of December, 1892, and the 1st of January, 1893. In March or February, 1894, and for the five years next preceding, he was the owner of an interest in a mercantile business in San Diego, carried on under the name and style of Hop Wo Chung & Co., a firm consisting of six partners, and for his interest in this firm he paid $1,500. For six years previous to the acquisition of this interest he was employed as a cook, and, with the savings thereby accumulated, he purchased the aforesaid interest. Some time between the 26th and the last day of December, 1892, he left the United States for China, from the port of San Francisco, intending to return, and having, prior to his departure, to wit, on the 26th day of Decem-

ber, 1892, for purposes of his identification, procured a certificate, bearing his photograph, signed by five citizens of San Diego, to the effect that they had known him for about two years as a resident of said city of San Diego, and that he was a merchant and "member of Hop Wo Chung & Co., a firm engaged in a general merchandise business at said city." For about four months of the year next preceding his departure from the United States he was employed as cook at a restaurant in said city of San Diego. This employment terminated some three or four months before his departure, and for the said last-mentioned three or four months he lived at the store belonging to the firm of which he was a member, and aided in the conduct of its business. He returned to San Francisco in December, 1893, and on the 12th day of that month, after an examination of the above-mentioned certificate by the customhouse officials, who detained him half a day, he was permitted to land. He then went for a short while to Sacramento, to visit an uncle, and from there to San Diego. On the 16th of February, 1894, at San Diego, he applied for and received a certificate of residence as a Chinese laborer under the amendatory act of November 3, 1893. A short time before that he sold his interest in the mercantile business aforesaid, and a few months thereafter began working again as a cook, and was so employed at the time of his arrest.

The first section of the act of October 1, 1888, which act is supplementary to the act of May 6, 1882, provides:

"That from and after the passage of this act, it shall be unlawful for any Chinese laborer who shall at any time heretofore have been, or who may now or hereafter be, a resident within the United States, and who shall have departed, or shall depart, therefrom, and shall not have returned before the passage of this act, to return to, or remain in, the United States." 25 Stat. 504.

The defendant claims to be exempt from said section on the grounds:

First. That the lawfulness of his entrance into the United States, or, more specifically, whether he was a merchant or a laborer, cannot be made the subject of inquiry in this proceeding, because the question was adjudicated by the collector of customs at San Francisco, whose duty it was to pass upon the sufficiency of his proof when the defendant was permitted to land. This contention of the defendant finds support in the case of U. S. v. Lee Hoy, 48 Fed. 825. In that case the court enunciates as applicable thereto and cites authorities in support of the general doctrine that, "when the law has confided to a special tribunal authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal within the scope of its authority is conclusive upon all others." A careful reading of the decision, however, shows that it was rested mainly on section 12 of the act of September 13, 1888, which is as follows:

"That before any Chinese passengers are landed from any such vessel, the collector, or his deputy, shall proceed to examine such passengers, comparing the certificates with the list and with the passengers; and no passenger shall be allowed to land in the United States from such vessel in violation of law; and the collector shall in person decide all questions in dispute with regard to the right of any Chinese passenger to enter the United States, and his de-

cision shall be subject to review by the secretary of the treasury, and not otherwise." 25 Stat. 478.

The circuit court of appeals of this circuit, on an appeal of the case last cited, held that said section 12 was never in force. On this subject the court says:

"In the opinion of the court which accompanied the findings of fact and conclusions of law the court appears to have assumed that section 12 of the act of September 13, 1888, is in force, and that consequently the action of the collector in admitting Gee Lee was final, and not reviewable by the court. But we are of opinion that such section never went into force. It occurs in a statute entitled 'An act to prohibit the coming of Chinese laborers to the United States,' the taking effect of which so far is made to depend upon the ratification of a treaty then pending between the United States and the emperor of China, which ratification had never taken place. Particular provisions of the act may be in force, as not being within the purview thereof, as declared in section 1, as follows: 'It shall be unlawful for any Chinese person, whether a subject of China or any other power, to enter the United States except as hereinafter provided.' Such is section 13 of the act, which provides for the arrest and deportation of 'any Chinese person * * * found unlawfully in the United States,' and under which this proceeding was instituted. It follows that section 12 of the statute, which is wholly taken up with the future landing or excluding of Chinese passengers by the collector, is not in force, and his act in admitting or refusing Gee Lee to enter the United States is not final; but the truth of the matter may be inquired into in any appropriate judicial proceeding, of which habeas corpus and arrest for being unlawfully in the United States are two." U. S. v. Gee Lee, 1 C. C. A. 516, 50 Fed. 271.

This decision, of course, is authoritative. But, even had the question not been so decided by the appellate court of this circuit, I should still hold the general doctrine enunciated in the case in 48 Fed., above cited, to be inapplicable to the action of a collector of customs in permitting or refusing to permit a Chinese person to land. The books are full of cases in which the rights of Chinese persons to enter this country have been re-examined on habeas corpus, after denials of such rights by customs officials; and I have not been able to find an opinion by any court in which the authority for such re-examination is questioned. It was, doubtless, in view of this unbroken line of decisions, and for the purpose of changing the law thus declared, that congress enacted the twelfth section of the act of September 13, 1888. With this section in force, the action of the collector, in the absence of fraud, would be conclusive and final. As I have already stated, however, the appellate court of this circuit has decided that said section never became a law. This statutory provision being thus disposed of, the question here involved is definitely settled by the decision of the supreme court of the United States in the case of U. S. v. Jung Ah Lung, 124 U. S. (Lawy. Ed.) 591, 8 Sup. Ct. 663. The syllabus of that case (subdivision 3), as given in the Lawyers' Edition, is as follows:

"The authority to pass upon the question of allowing a subject of China to land in the United States is not exclusively confided by the statute to the collector of the port, but his action in the premises may be reviewed."

Conformably to this decision of the supreme court of the United States, and to the decision of the circuit court of appeals of this circuit in the case of Gee Lee, supra, I hold that the lawfulness or

unlawfulness of the defendant's return to this country may be inquired into and determined in this proceeding.

Second. Defendant further insists that he was entitled to return to the United States, for the reason that at the time of his departure therefrom he was a merchant, within the meaning of that term as used in the treaty and statutes then in force; and that he procured his certificate to that effect under the circular of the treasury department of July 3, 1890, and that said certificate was all the proof then required of his right to re-enter the country. This raises the question whether the lawfulness of his return into the United States, or, in other words, whether he was a merchant or laborer, is to be determined by the law as it stood at the time of his departure or by the act of November 3, 1893, which was passed during his absence from the United States. If this last-named act controls, it is clear, to my mind, that the defendant was not a merchant, but a laborer. The second section of the act ·provides as follows:

"The term 'merchant,' as employed herein and in the acts of which this is amendatory, shall have the following meaning, and none other: A merchant is a person engaged in buying and selling merchandise, at a fixed place of business, which business is conducted in his name, and who during the time he claims to be engaged as a merchant, does not engage in the performance of any manual labor, except such as is necessary in the conduct of his business as such merchant. Where an application is made by a Chinaman for entrance into the United States on the ground that he was formerly engaged in this country as a merchant, he shall establish by the testimony of two credible witnesses other than Chinese the fact that he conducted such business as hereinbefore defined for at least one year before his departure from the United States, and that during such year he was not engaged in the performance of any manual labor, except such as was necessary in the conduct of his business as such merchant, and in default of such proof shall be refused landing."

Before proceeding to the decisive point in this connection, I may say that it is matter of serious doubt with me if the defendant is not excluded from the above definition of "merchant," on the ground that the business of the firm to which he belonged was not conducted in his name. I am aware that the circuit court of appeals of this circuit has decided that, in order to constitute a person a merchant within the meaning of said definition, it is not necessary that his name appear in the firm designation, but that it is sufficient if his interest be real, and appear in the business and partnership articles in his own name. Lee Kan v. U. S., 10 C. C. A. 669, 62 Fed. 914. In the present case there is no proof whatever that the defendant's name appeared in the partnership articles, or anywhere else in the business; and herein this case is distinguished from that of Lee Kan v. U. S., supra. However, it is unnecessary to decide this question, as there is another point manifestly determinative of this branch of the case. The defendant himself testifies that he was for three or four months of the year next preceding his departure from the United States engaged in the performance of manual labor (that is, cooking at a restaurant) in no way connected with the business of the firm of which he was a member. The only question necessary to determine, therefore, is

whether or not said act of November 3, 1893, applies. This question is affirmatively answered by the decision in Re Yee Lung, 61 Fed. 641. In that case Judge Morrow expressly holds, and I think rightly, that said act applies as well to those who departed from the United States prior to its passage as to those who departed thereafter. I am of the opinion that the defendant's return to the United States was unlawful, and that he is not entitled to be or remain in this country. The judgment of the commissioner, therefore, is affirmed, and it is now ordered that the same be executed, pursuant to the terms thereof, and for this purpose the defendant is remanded to the custody of the marshal.