In re LEE GON YUNG (UNITED STATES, Intervener).

(Circuit Court, N. D. California. November 13, 1901.)

No. 13,176.

1. CHINESE EXCLUSION—PRIVILEGE OF TRANSIT—ACT OF 1888.
   Section 8 of the Chinese exclusion act of September 13, 1888 (25 Stat. 478), which relates entirely to the privilege of transit across the territory of the United States in the course of a journey by Chinese persons to or from other countries, was independent legislation, not dependent, like section 1, on the ratification of the treaty then pending to become a law, and it became effective on its passage.

2. SAME—CONSTRUCTION OF TREATY OF 1894—VALIDITY OF REGULATIONS.
   The treaty between China and the United States of December 8, 1894, provides (article 3, par. 2, 28 Stat. 1211) that "Chinese laborers shall continue to enjoy the privilege of transit across the territory of the United States, * * * subject to such regulations by the government of the United States as may be necessary to prevent said privilege of transit from being abused." The privilege had previously been exercised under regulations prescribed by the treasury department, the last of which prior to the treaty were promulgated September 28, 1889, and were in force when the treaty was ratified. Held, that effect of such provision of the treaty was to recognize the regulations then in force, and to agree to their continuance, and to such modifications as might be found necessary to prevent the privilege granted from being abused.

3. SAME—CONCLUSIVENESS OF COLLECTOR'S DECISION.
   Under the regulations of the treasury department of December 8, 1900, relating to the transit of Chinese persons through the territory of the United States, and also by those of September 28, 1889, it is incumbent upon a Chinese person applying for the privilege of transit to sat-

isfy the collector of the port of his bona fide intention to make such transit; and on his failure to do so the collector may order his deportation, and his decision cannot be reviewed by the courts, but only by an appeal to the department.

On Application for Writ of Habeas Corpus.

E. J. Foulds and Earll H. Webb, for petitioner.

Edward J. Banning, Asst. U. S. Atty., for intervener.

MORROW, Circuit Judge. The petitioner alleges that he is unlawfully and unjustly detained and imprisoned by Alexander Center, general agent for the Pacific Mail Steamship Company, by virtue of an order of deportation made by the collector of customs for the port of San Francisco; that on or about the 1st of September, 1901, the petitioner purchased from the agent of the Pacific Mail Steamship Company at Hong Kong, China, passage from said last-mentioned place to the City of Mexico, paying therefor the sum of 168 Mexican dollars, and received a ticket for passage on the steamship Peru to the port of San Francisco, and an order upon the San Francisco agent of the said company for passage by rail from the said city of San Francisco, Cal., to the City of Mexico, which ticket and order he now has in his possession; that petitioner is not making application to enter the United States, but to pass in transit across the territory thereof, being a Chinese laborer on his journey across the territory of the United States from the foreign country of China to the foreign country of Mexico; that the collector of customs of the port of San Francisco has made the order of deportation alleged, and petitioner is now confined in the manner described, and will be deported and sent back to China, the country from whence he came, unless prevented by the order of this court. The return of Alexander Center is to the effect that he detains the petitioner at the port of San Francisco, and refuses to permit him to pursue his journey to the City of Mexico, under and by virtue of an order to that effect issued by the collector of the port of San Francisco. The United States has intervened, by the United States attorney, and alleges, among other things, that the collector of customs, after a careful and due investigation, has decided that he is not satisfied that the petitioner does intend in good faith to continue his journey, if permitted so to do, through the territory of the United States to the republic of Mexico, and for that reason has denied to the petitioner the privilege of further continuing his journey through the territory of the United States, and has ordered the petitioner deported to China, the country from whence he came. It is further alleged by the attorney for the United States that since the decision of the collector of customs and the order of deportation made by him as aforesaid, the petitioner has, through his counsel, appealed to the secretary of the treasury of the United States from such decision and judgment and order of deportation; that said appeal is now pending and undetermined; and that the court has no jurisdiction over the petitioner or the subject-matter of the proceeding. The petitioner has demurred to the return of Alexander Center and to

the intervention of the United States on the ground that neither the return nor the intervention state facts sufficient to justify the detention of the petitioner.

The action of the collector of customs is based upon the authority contained in the regulations governing passage of Chinese in transit through the United States, prescribed by the commissioner general of immigration and approved by the secretary of the treasury, dated December 8, 1900. These regulations were addressed to collectors of customs and all other officers charged with the enforcement of the Chinese exclusion laws, and provide as follows:

"Any Chinese person arriving at your port claiming to be destined to some foreign country and seeking permission to pass through the United States, or any portion thereof, to reach such alleged foreign destination, shall be granted permission for such transit only upon complying with the following conditions:

"(1) The applicant shall be required to produce to the collector of customs at the first port of arrival a through ticket across the whole territory of the United States (and to his or her alleged foreign destination according to the steamship manifest) intended to be traversed, and such other proof as he (or she) may be able to adduce, to satisfy the said collector that a bona fide transit only is intended, and such ticket and other evidence presented must be so stamped, or marked, and dated by the said collector, or such officer as he shall designate for that purpose as to prevent their use a second time; but no such applicant shall be considered as intending bona fide to make such transit only, if he (or she) has previously, on same arrival, made application for and been denied admission to the United States."

It is contended on behalf of the petitioner that these regulations are without authority of law, and therefore void, and of no effect. The attorney for the United States finds authority for the regulations in section 8 of the act of September 13, 1888 (25 Stat. p. 478). That section provides as follows:

"That the secretary of the treasury shall be, and he hereby is, authorized and empowered to make and prescribe, and from time to time to change and amend such rules and regulations, not in conflict with this act, as he may deem necessary and proper to conveniently secure to such Chinese persons as are provided for in articles second and third of the said treaty between the United States and the empire of China, the rights therein mentioned, and such as shall also protect the United States against the coming and transit of persons not entitled to the benefit of the provisions of said articles. And he is hereby further authorized and empowered to prescribe the form and substance of certificates to be issued to Chinese laborers under and in pursuance of the provisions of said articles, and prescribe the form of the record of such certificate and of the proceedings for issuing the same, and he may require the deposit as a part of such record of the photograph of the party to whom any such certificate shall be issued."

It has been questioned whether any part of the act of September 13, 1888, ever became a law. Section 1 of the act provided that from and after the date of the exchange of ratifications of the then pending treaty between the United States and the empire of China it should be unlawful for any Chinese person, whether a subject of China or of any other power, to enter the United States, except as in the act thereinafter provided. The treaty here referred to was never ratified, and those sections of the act relating to the entry of Chinese into the United States, being dependent upon the ratification of the treaty, never became operative. Li Sing v. U. S.,

180 U. S. 486, 488, 490, 21 Sup. Ct. 449, 45 L. Ed. 634. But it has been held in several cases in the district and circuit courts that certain sections of the act, not being so dependent, became law upon the passage of the act. U. S. v. Jim (D. C.) 47 Fed. 431; In re Mah Wong Gee (D. C.) Id. 433; U. S. v. Chong Sam, Id. 878; U. S. v. Lee Hoy (D. C.) 48 Fed. 825; U. S. v. Gee Lee, 1 C. C. A. 516, 50 Fed. 271; U. S. v. Long Hop (D. C.) 55 Fed. 58. As section 8 of the act in question does not relate to the entry of Chinese persons into the United States to remain and become a part of the population of the country, but to the privilege of transit across the territory of the United States in the course of a journey to or from other countries, I am of the opinion that the section did not depend upon the ratification of the treaty to become a law, but was independent legislation on the part of congress. To the same effect, see the opinion of Judge De Haven in the matter of the application of Fok Young Ho for a writ of habeas corpus, given on October 23, 1901. But I am of the further opinion that the authority for the regulations under which the collector of customs acted in this case may be found in the second paragraph of article 3 (28 Stat. 1211) of the treaty between this country and China entered into on December 8, 1894, which reads as follows:

"It is also agreed that Chinese laborers shall continue to enjoy the privilege of transit across the territory of the United States in the course of their journey to or from other countries, subject to such regulations by the government of the United States as may be necessary to prevent said privilege of transit from being abused."

It will be observed that this paragraph of the treaty provides for the continuance of the privilege of transit. It was a privilege that had been exercised under the previous treaty of July 19, 1881, and the act of congress of May 6, 1882, regulating Chinese immigration into the United States, and it was the purpose of article 3 of the treaty of December 8, 1894, to provide for its continuance. The privilege had been exercised under regulations prescribed by the department of the government of the United States having jurisdiction of that subject. The first regulations relating to the transit of Chinese persons across the territory of the United States were prescribed by the secretary of the treasury under date of January 23, 1883, without specific authority in either the then existing treaty or act of congress. These regulations continued until the act of October 1, 1888, providing for the further exclusion of Chinese laborers by prohibiting the return of all those who had once been in the United States and had departed therefrom, and all those who might thereafter come into the United States and depart therefrom. The secretary of the treasury thereupon prescribed the regulations dated September 28, 1889, the purpose of which was to enable Chinese persons to exercise the privilege of transit under the act of October 1, 1888. These regulations were in force when the treaty of December 8, 1894, was negotiated and ratified. The treaty provided for the continuance of the privilege of transit "subject to such regulations by the government of the United States as may be necessary to prevent said privilege of transit being

abused." In my opinion, this provision of the treaty recognized the regulations then in force, and agreed to their continuance and to such modification of them as might be found necessary to prevent the privilege of transit being abused. The changes or modifications contained in the new regulations dated December 8, 1900, are, however, immaterial. The authority of the collector to determine whether a Chinese person arriving at a port of the United States intends to make a bona fide transit across the territory of the United States is contained in the new regulations precisely as it was provided under the regulations of September 28, 1889. In my opinion, therefore, the treaty recognizes the binding force of these regulations, and to that extent, at least, the treaty is self-executing, and is as much the law of the land as an act of congress. It follows from these conclusions that it was incumbent upon the petitioner to satisfy the collector of customs at this port that he had a bona fide intention to make the transit across the territory of the United States, and, having failed to do so, the detention of the petitioner for deportation is within the jurisdiction of that officer, and not subject to review in this court upon this proceeding.

The writ will be discharged, and the petitioner remanded to the custody from which he was taken.