In re JEW WONG LOY.

(District Court, N. D. California. December 17, 1898.)

No. 11,563.

1. EXCLUSION OF CHINESE—HABEAS CORPUS.
   A claim by one of Chinese parentage, who is not permitted to land in the United States, that he was born in this country, may be determined by the district court in a habeas corpus proceeding.[1]

2. SAME—SUFFICIENCY OF EVIDENCE.
   Act May 5, 1892, § 3, providing that "any Chinese person * * * shall be adjudged to be unlawfully within the United States unless such person shall establish, by affirmative proof, to the satisfaction of such justice, judge, or commissioner, his lawful right to remain in the United States," applies to a proceeding whereby a person of Chinese descent is seeking to enter and remain in the United States; and hence the proof of his birth in the United States must be to the satisfaction of the referee taking the evidence.

3. SAME—CREDIBILITY OF WITNESS.
   Although the claim of one of Chinese parentage, who is seeking admittance to this country, that he was born here, is corroborated by another Chinese witness, and uncontradicted, yet their testimony may be discredited if contradictory as to other matters.

Henley & Costello, for petitioner.
H. S. Foote, U. S. Atty.

DE HAVEN, District Judge. The petitioner is of Chinese parentage. He came from China on the steamship Belgic, arriving at the port of San Francisco on August 22, 1898; and, the collector of that port having refused to permit him to land, he was detained by the general agent of the Pacific Mail Steamship Company, for the purpose of being returned to China. Thereupon this proceeding was commenced, and the petitioner brought before the court upon a writ of habeas corpus. The petitioner alleges in the petition filed that he was born in the United States, and upon that ground asks the court to adjudge that he has the right to land in the United States, and that his detention by the general agent of the Pacific Mail Steamship Company, for the purpose of returning him to China, is illegal. The right thus claimed by the petitioner is one which the court has jurisdiction to inquire into, and determine, in this proceeding. In re Jung Ah Lung, 25 Fed. 141. In accordance with the usual practice, the case was referred to United States Commissioner Heacock, as a special referee, with directions to hear the testimony, and report to the court his conclusion as to the facts. Such hearing was had, and the referee found as a fact that the petitioner was not born in the United States; and, exceptions having been taken thereto, the question for determination is whether such finding is justified by the evidence. It appears from the report of the testimony given before the referee that the petitioner testified that he was born in the city and county of San

[1] As to citizenship, on return to the United States, of persons' born here of Chinese parents, see note to Gee Fook Sing v. U. S., 1 C. C. A. 212.

Francisco on March 27, 1877, and was taken by his parents to China in the following year. On this point the petitioner was fully corroborated by his uncle, also a Chinese person, and their testimony was not in any respect contradicted by that of any other witness. There was, however, a conflict between the testimony of the petitioner and that of the uncle upon a collateral matter,—the petitioner testifying that the house in which he lived in China was on one side of a certain alley; and the uncle, that it was upon the opposite side. The report of the referee further shows that because of this conflict he was unable to give credit to the testimony of the witnesses in relation to the main fact upon which they agreed, namely, as to the place of petitioner's birth. The attorneys for the petitioner contend that the case as presented is substantially one where the fact that petitioner was born in this country was sworn to by the uncontradicted evidence of two competent witnesses; that this evidence was not incredible upon its face, or in any degree improbable; and it is further contended that the commissioner was therefore bound to find that the fact so testified to was judicially established.

It is undoubtedly the rule that the positive testimony of a disinterested, unimpeached, and credible witness cannot be disregarded by a court or jury arbitrarily or capriciously. Kavanagh v. Wilson, 70 N. Y. 177; Elwood v. Telegraph Co., 45 N. Y. 549; Printing Co. v. Hichborn, 4 Allen, 63; Newton v. Pope, 1 Cow. 109; Quock Ting v. U. S., 140 U. S. 417, 11 Sup. Ct. 733, 851; People v. Tuczkewitz, 149 N. Y. 240, 43 N. E. 548. But, in the practical administration of law, the question whether a witness is in fact credible—that is, whether his testimony was such as to produce in the mind a conviction of its truth—is one that must be determined by the tribunal before whom the witness appears, and in the decision of which that tribunal must necessarily be vested with a very wide discretion. The manner of the witness in testifying; his general appearance, as indicating a person with or without moral character; his apparent sympathy or bias in favor of the party for whom he is called; whether he is wholly indifferent to the result of the cause; if related to or friendly with one of the parties, to what degree such relationship or friendship may have colored his testimony,—are some of the matters to be considered in reaching a conclusion as to how far credit shall be given to the testimony of a witness, and it may be confidently stated that no court ought to accept and act upon the testimony of a witness as true when, after careful and conscientious consideration, it does not believe such testimony to be true.

In this case the petitioner was an interested party, and the referee was not bound, as a matter of law, to believe his testimony. Elwood v. Telegraph Co., 45 N. Y. 549; Printing Co. v. Hichborn, 4 Allen, 63. So, also, it was his peculiar province to determine the degree of credit which should be given to the testimony of petitioner's uncle, in so far as he identified the petitioner as a person born in this country more than 21 years ago, and taken to China when an infant. Unless, as claimed by the witness, he had seen the petitioner in China at a later period, his identification of the petitioner was entitled to little weight; and if he did not know the location of the house in which petitioner lived in China, and in which house he testified he had seen him, the

referee·was not bound to believe that the witness testified truthfully as to the fact of having seen petitioner in China at the time stated by him.

2. But, independently of the particular reasons which the referee gave for the conclusion reached by him, the important fact remains that he did not in fact believe the testimony of the petitioner and ·his witness, and was not satisfied therefrom that the petitioner was born in this country, and so entitled to enter and remain in the United States.

Section 3 of the act to prohibit the coming of Chinese persons into the United States (27 Stat. 25), approved May 5, 1892, provides:

"Sec. 3. That any Chinese person or person of Chinese descent arrested under the provisions of this act or the acts hereby extended shall be adjudged to be unlawfully within the United States unless such person shall establish, by affirmative proof, to the satisfaction of such justice, judge or commissioner, his lawful right to remain in the United States."

This section, although in terms relating to cases where a Chinese person or person of Chinese descent is proceeded against by the United States upon a charge of being unlawfully in this country, is equally applicable to a proceeding like this, where a person of Chinese descent is asking the court to adjudge that he is lawfully entitled to enter and remain in the United States. The effect of this section is to raise a presumption of law that Chinese persons or persons of Chinese descent are not entitled to remain in the United States; and, as a consequence, whenever the right of such a person to so remain is a question in issue before the court, he must be adjudged to be unlawfully here, unless this presumption is overcome by affirmative proof to the satisfaction of the tribunal called upon to determine the fact. The law applies to all cases, without regard to the particular ground upon which the right is claimed; and when a Chinese person or person of Chinese descent claims the right to remain in the United States, upon the ground that·he was born therein, he is required to establish the fact of such nativity by proof that shall be satisfactory to the court,—proof sufficiently strong to overcome the presumption established by the section above cited. The court must be satisfied that it is not being made to serve as a mere instrumentality for the evasion of the laws of congress relating to the exclusion of Chinese; and, unless fully persuaded that the person claiming the right to remain is in fact a native of this country, its finding should be in accordance with the presumption of law above stated, and the right of such person to remain should be denied. Furthermore, in considering the weight to be given Chinese testimony in this class of cases, it is not improper to bear in mind that, in many cases arising under the Chinese exclusion·acts, certain facts are required to be proven by other testimony than that of Chinese witnesses. Thus, a Chinese laborer, without the certificate required by law, and who claims that, by reason of "accident or sickness or other unavoidable cause," he was unable to procure the certificate within the time prescribed by the statute, is required to clearly establish, "to the satisfaction of the court, and by at least one credible white witness, that he was a resident of the United States at the time of the passage of the act" of May 5, 1892

(27 Stat. 25). So, also, section 2 of the Chinese exclusion act, approved November 3, 1893 (28 Stat. 7), declares:

"Where an application is made by a Chinaman for entrance into the United States on the ground that he was formerly engaged in this country as a merchant, he shall establish by the testimony of two credible witnesses other than Chinese the fact that he conducted such business as hereinbefore defined for at least one year before his departure from the United States," etc.

In Fong Yue Ting v. U. S., 149 U. S. 729, 13 Sup. Ct. 1028, the supreme court observed:

"The reason for requiring a Chinese alien, claiming the privilege of remaining in the United States, to prove the fact of his residence here, at the time of the passage of the act, 'by at least one credible white witness,' may have been the experience of congress, as mentioned by Justice Field in Chae Chan Ping's Case, that the enforcement of former acts, under which the testimony of Chinese persons was admitted to prove similar facts, 'was attended with great embarrassment, from the suspicious nature, in many instances, of the testimony offered to establish the residence of the parties, arising from the loose notions entertained by the witnesses of the obligation of an oath.' 130 U. S. 598, 9 Sup. Ct. 627."

Congress has not, however, enacted that, when a person of Chinese descent claims to have been born in the United States, he must establish such fact by testimony of witnesses other than Chinese. This omission cannot be supplied by the courts, and therefore Chinese persons are competent witnesses in cases of this character, but their credibility is for the court to determine in each case; and in a proceeding like this, where only this class of witnesses testify that the Chinese person applying for admission into the United States is a native of this country, unless the court is fully satisfied of the truth of such testimony, its finding should follow the presumption that a Chinese person coming from China, and seeking to land in the United States, is an alien, and not a native-born citizen of this country. The exceptions will be overruled.