## UNITED STATES v. KUT YONG.

### DECIDED: JULY 22, 1901.

1. In a proceeding to deport a Chinese person found in the Territory of Hawaii without the certificate of residence required by the Act of Congress of May 5, 1892 (as amended by the Act of Congress of November 3, 1893), and the Act of Congress of April 30, 1900, providing a government for the Territory of Hawaii, the burden of proof is on said Chinese person to prove her right to remain.
2. The policy of the law of the United States in relation to Chinese is the exclusion of all save the few privileged classes.
3. The wife partakes of the husband's status as a laborer.
4. In a proceeding to deport a Chinese woman found in the Territory of Hawaii without the certificate of residence required by the Act of Congress of May 5, 1892 (as amended by the Act of Congress of November 3, 1893), and the Act of Congress of April 30, 1900, providing a government for the Territory of Hawaii;
*Held*, that in order to entitle said Chinese woman to remain, she must show to the satifaction of the court either that she was born in the Hawaiian Islands, and therefore an American citizen under the provisions of the aforesaid Act of Congress of April 30, 1900; or is the wife of a Chinese merchant domiciled in the Territory; or that she is the wife of an American citizen.
5. Unless the Court is fully satisfied of the truth of Chinese testimony, the presumption is that a Chinese person coming from China and seeking to land in this country is an alien, and not a native born citizen; following In re Jew Wong Loy, 91 Fed. 243.
6. Where a Chinese is acting as manager of, and who worked on, a rice plantation belonging to an unincorporated company, in which he claims an interest, but which company had no articles of incorporation or

articles of copartnership in which his name appeared as a partner, *Held,* that under the most favorable construction to be placed upon his occupation, he is nothing but an employe of the company, and is therefore not within the merchant class, but is a laborer.

CHINESE EXCLUSION LAW.    PROCEEDING TO DEPORT.

*J. J. Dunne,* Acting U. S. District Attorney, for plaintiff.
*T. McCants Stewart,* for defendant.

ESTEE, J.    This is a proceeding for the deportation of Kut Yong, a Chinese woman, arrested on the complaint of E. R. Hendry, a Deputy Marshal of the United States for the District of Hawaii, for being a Chinese laborer within the limits of the United States, and within the limits of the District of Hawaii, without the certificate of residence required by the Act of Congress, approved May 5th, 1892, and the Act of Congress approved November 3d, 1893, amendatory thereof, and the Act of Congress approved April 30th, 1900, providing a government for the Territory of Hawaii.

The defendant sets up as a defense to this proceeding, a legal right to remain in the Territory on the grounds, first, that she was born in the Hawaiian Islands on the 2nd day of October, 1881, her father, one Mau Quon, being a naturalized citizen of Hawaii; and second, that she was legally married in China to one Tin Yee, a merchant, residing and doing business in the Territory of Hawaii.    The matter was heard by the Court.

The defense in this proceeding is an attempt to cover every ground which could tend to show a reason for the defendant being here and her right to remain.

If she were born in the Hawaiian Islands as claimed, although of Chinese parentage, yet she would be an American citizen amd entitled to remain. See Constitution of the Republic of Hawaii, Section 1, Art. 17; Section 4 of an Act of Congress approved April 30th, 1900, for the government of the Territory of Hawaii; *In re Wong Kim Ark,* 71 Fed. Rep. 382; *In re*

*Look Tin Sing,* 21 Fed. Rep. 905; *Gee Fook Sing v. U. S.* C. C. A. 49 Fed. Rep. 146.

If she were proven the wife of Tin Yee, and he were a domiciled Chinese merchant, she would be equally entitled as such wife to remain.

But are such contentions borne out by the testimony in this case? I think not. The burden of proof is on the defendant.

It is prescribed by the Statute of the United States, that:

"Any Chinese person or person of Chinese descent arrested under the provisions of this Act, or the Acts hereby extended, shall be adjudged to be unlawfully within the United States, unless such person shall establish by affirmative proof to the satisfaction of such justice, judge or commissioner, his lawful right to remain in the United States."

Section 3 Act of May 5th, 1892, Vol. 27, Stats. U. S. 25; *In re Sing Lee et al.,* 54 Fed. Rep. 334; *U. S. v. Wong Dep Ken,* 57 Fed Rep. 206; *U. S. v. Hing Quong Chow,* 53 Fed. Rep. 233; *Li Sing v. U. S.,* 180 U. S. 486.

The witnesses called by the defendant to identify her as being a former Chinese child now known as Kut Yong and as having been born in these Islands, who left here for China when she was a child and returned here on the steamer "Doric" on the —— day of June last, are all Chinese, and with the exception of possibly one, Hoy Sung, are all related to the defendant. Their testimony as to the date of her birth at Palama, Honolulu, on the Island of Oahu, and her age when she left here for China is conflicting. Ahin, the uncle, who manifests throughout the proceeding a deep interest in this woman and who brought her here from China and is the leading spirit in the attempt to keep her here, testifies that he is the brother of Kut Yong's father, who is dead; "that he cannot remember exactly when she, Kut Yong, was born, but that she is now twenty-one years of age;" Chu Quong, who also claims to have been a brother of the young woman's father, says, "she was born some time in October, 1881," which would leave her lacking one year and several months of being twenty-one.

And again as to the age of the child when she left for China, there is a discrepancy in the testimony of all the witnesses who should know.  Ahin fixes her present age at twenty-one years and testifies that it was sixteen years since she left for China; Chu Quong says she was about five or six years old when she left, but was born in October, 1881; while the alleged aunt, Sui Shee, the wife of Ahin, fixes the age when she left, first at "two or three years;" then at "four or five years" and finally at "three or four years;" while Kut Yong herself says she does not remember of ever living in the Hawaiian Islands, she was too young.  If this is true, she must have left here at an extremely early age, earlier than is testified to by any of the witnesses, for surely a child of from five to six years old would remember something and especially of the fact of her leaving one country in a ship and going to another.

There is nothing clear or definite either as to the birth of a child known as Kut Yong in Palama at the time and under the circumstances testified to, and certainly nothing which is satisfactory as proving to the Court that even if such a child had been born in the islands under such circumstances, the defendant is such child grown to womanhood.  So too the reasons given for the identification of this young woman are absolutely unconvincing and in their detail extraordinary.  Ahin gives as his reason for knowing her after the lapse of so many years, "because she is my relative."  The other alleged uncle, Chu Quon, "because I worked in the same place with her father," and Yong Wa Soy, still another alleged uncle, "because I saw her in China; because she is my brother's daughter."

Tin Yee says he played with her as a child in Palama, and knew her by her appearance; while Kut Yong says, "the first time I know this man was when he was in China, before he married me I did not know about him at all."

The facts are evident that defendant is a Chinese woman.  In speech and dress and mode of living she is thoroughly Chinese.  While asserting a claim of birth in these islands and a marriage with Tin Yee, a man who cannot speak English, but who

also claims to be a native of these islands, she still says she "calls China her home."

There are five witnesses who testify as to her birth in these islands, but in an uncertain, indecisive and contradictory manner. All five of these witnesses are Chinese, and are all related to the defendant and interested in the issue of this proceeding.

It has been held that unless the Court is fully satisfied of the truth of the testimony of Chinese witnesses, its finding should follow the presumption that a Chinese person coming from China, and seeking to land in this country is an alien, and not a native born citizen of this country. *In re Jew Wong Loy,* 91 Fed. 240, 243.

It has also been held many times that long absence in China (as in this case) is highly prejudicial to the claim of the applicant for re-entry.

*Gee Fook Sing v. U. S.,* 49 Fed Rep. 146; *Lee Sing Far v. U. S.,* 94 Fed. Rep. 834; *In re Louie You,* 97 Fed. Rep. 580; *In re Lan Sam,* decided by this Court in Aug., 1900. [1]

Counsel for defendant claims that as the evidence upon the question of the birth of this woman in these islands is uncontradicted, that therefore it should be believed. It is a well known principle of law often adjudicated that evidence to be believed must not only proceed from the mouth of a credible witness, but must be such as to be credible in itself, such as the common experience and observation of mankind can approve as proper under all the circumstances. The manner of the witness, the improbability of his story, his incapacity to recollect the transactions testified to, his sympathy or bias in favor of the person for whom he is called, his interest in the result of the cause, his relations with and friendship for the defendant, the entire situation under which he testifies, all this may justify the Court in wholly rejecting his testimony even in cases where he may not be attacked in his reputation or contradicted by other witnesses.

See *Blankman v. Vallejo*, 15 Cal. 638; *McFadden v. Wallace*, 38 Id. 51; *Sonoma v. Stofen*, 125 Id. 32; *Lasher v. Colton*, 80 Ill. App. 75; *French v. Milliard*, 2 Ohio St. 44; *Ellwood v. Tel. Co.*, 45 N. Y. 549; *Daggers v. Van Dyke*, 37 N. J. Eq. 130; *Tracey v. Town of Phelps*, 22 Fed. Rep. 634; *In re Jew Wong Loy*, 91 Id. 240; *In re Louie You*, 97 Id. 580; *Lee Sing Far v. U. S.*, 94 Id. 834, 836-7; *Quock Ting v. U. S.*, 140 U. S. 417.

The Court therefore holds that the presumption in this case is that the defendant is an alien and not a native born American, and that such presumption has not been overcome by the testimony adduced in her behalf.

The second claim of defendant to remain, namely that she is the wife of a domiciled merchant, is two fold: in that it is necessary for her to prove affirmatively that the alleged husband, Tin Yee, is a merchant in the sense used in the Statute, and second, that she is his wife.

The term "merchant" as used in the "Chinese Exclusion Laws," is defined to be:

"A person engaged in buying and selling merchandise at a fixed place of business, which business is conducted in his own name, and who during the time he claims to be engaged as a merchant, does not engage in the performance of any manual labor, except such as is necessary in the conduct of his business as such merchant."

See Sec. 2, Act of Congress of Nov. 3, 1893, Vol. 28, U. S. Stats. Page 7.

Tin Yee nowhere establishes in the testimony given in this proceeding that he was a merchant. On the contrary, the testimony clearly shows that he acted as manager of the rice plantation of the Sun Wo Hing Co., and as he testified, "worked on its plantation and took charge of its business."

It is true that it is in testimony that he had an interest in the Hop Sink Co., but this rests upon the mere assertion of the Chinese witnesses, who testified that neither this company nor the Sun Wo Sing Co., in which it it is also claimed Tin Yee had

an interest, is incorporated, or had articles of co-partnership in which the name of Tin Yee appeared as a partner, or in fact any articles of co-partnership   U. S. v. Loo Way, 68 Fed. 475, 478.

The parties interested in the Sun Wo Sing Co. are engaged in raising and selling rice, "not in selling goods," said Ahin; "only raising rice, that is all." And he adds, "they do not make a business of buying and selling other goods," and it is for this company that Tin Yee acts as manager. In the Hop Sink Company, he simply claims an interest.

It is clear that any man may have an interest in a company or corporation and yet be pursuing the vocation of a laborer. In the recent case of U. S. v. Yong Yew, 83 Fed. 832, a person whose "occupation" was that of a laundryman, but who had a "$1000 interest" in a Chinese grocery store and business, was held to be a "laborer" and not a "merchant," and so liable to deportation.

Tin Yee, upon the most favorable construction to be placed upon his occupation, is nothing but an employe of the Sun Wo Sing Co., which is engaged in operating a rice mill and rice plantations, and he is therefore not within the merchant class, but is a laborer.

The policy of the law in reference to Chinese is one of exclusion of all but the few privileged classes, and the decisions of the Courts follow strictly this policy. To quote the Attorney General of the United States:

"It may be stated comprehensively that the result of the whole body of these laws and decisions thereon is to determine that the true theory is not that all Chinese persons may enter this country who are not forbidden, but that only those are entitled to enter who are expressly allowed. This view is recognized by the general name under which the laws are known; the Chinese Exclusion Acts."

22 Opinions of the Attorney General, 132.

The classes of Chinese mentioned in our treaty with China who are expressly allowed to enter without the certificates re-

quired by the Acts of Congress, are "teachers, students, merchants, or travelers for curiosity." (Art. 11, Treaty of Nov. 17th, 1880.).

If Tin Yee, the alleged husband, is not a merchant but a laborer, the defendant would be debarred from re-entering, or remaining, if already in, as his wife under the circumstances in this case.

The wife partakes of her husband's status as a laborer and as such is debarred from admission by law. (*Opinion Solicitor of the Treasury,* Feb. 7, 1896.)

It was held in the case of *U. S v. Mrs. Gue Lim,* 176 U. S. 459, that "when the fact is established to the satisfaction of the authorities that the person claiming to enter either as the wife or minor child, is in fact the wife or minor child of one of the members of a class mentioned in the treaty as entitled to enter, then that person is entitled to admission without the certificate."

The defendant does not come within one of those classes. But Tin Yee claims birth in these islands, and that as the wife of an American citizen, Kut Yong should be permitted to remain. Conceding that if he had been born here his wife would be entitled to remain, there yet remains the marriage to be proven. This has not been done.

All the evidence in relation to the so-called marriage of Tin Yee and the defendant is a tissue of contradictions and suspicious circumstances. The date of the marriage is uncertain and vague; even the chief parties in interest differing as to the time. Hoy Sun, a particular friend of Tin Yee, testified that he went to China with him "two years ago, and was there when he was married;" while Tin Yee himself says he was married four years ago. The defendant says it is over three years ago since she was married.

Tin Yee says after marrying his wife he lived with her seven months; she says he lived with her five months when he returned to the Hawaiian Islands, leaving her in China. Ahin, the alleged uncle, brought the woman here on the

"Doric" when he returned to the islands after a visit to China. He took charge of her and paid her fare. The husband, Tin Yee, testified he did not know the amount it cost to bring his wife here. The lack of interest displayed by the alleged husband in the welfare of his wife seems to be equalled only by the wife's apathy in regard to him, as she said she preferred to live in her uncle's house rather than with her husband.

Indeed there is nothing in the evidence which tends to convince the Court of the truth of this marriage, or that the woman is the wife of Tin Yee. I am therefore of the opinion that she is not his wife and shall so hold.

As to the exclusion of Chinese, this Territory has now neither a law nor an exclusion policy of its own. The laws of Congress prevail. And while it is true the United States has always welcomed foreigners to its shores, yet the foreigners so welcomed have always been those who assimilated with and became a part of our people.

This nation has never favored the immigration of people who will not make citizens. It is American citizenship and not laborers for America which our laws most encourage; but Chinese are a very inferior material out of which to make American citizens. A man to be a good American citizen must be capable of studying our laws, speaking our language and adopting our customs. The United States, in common with many other nations, have taken long steps towards keeping Chinese laborers out of our country. And to that end the treaties with China, the statutes of the United States passed in conformity to those treaties, and the decisions of the Courts are a unit against the admission of Chinese laborers, and this action by this nation is prompted by the highest principles of self-preservation.

Having failed to prove her birth in these islands or her marriage to a domiciled Chinese merchant therein or to an American citizen, to the satisfaction of the Court, it is the judgment of the Court that Kut Yong is unlawfully within the United States and the District of Hawaii, and is hereby remanded to

the custody of the Marshal with directions to deport her to the country from whence she came.

(1)  *In re Lan Sam. Ante,* P, 6.