# LI SING *v.* UNITED STATES.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND
CIRCUIT.

No. 27.   Argued April 18, 19, 1900.—Decided March 18, 1901.

Li Sing was a Chinaman who, after residing for years in the United States,
returned temporarily to China, taking with him a certificate purporting
to have been issued by the imperial government of China, at its consulate
in New York, and signed by its consul, stating that he was permitted to
return to the United States, that he was entitled to do so, and that he was
a wholesale grocer.   On his return to the United States by way of Can-
ada, he presented this certificate to the United States collector of cus-
toms at Malone, New York, who cancelled it and permitted him to enter
the country.   Subsequently he was brought before the Commissioner of
the United States for the Southern District of New York, charged with
having unlawfully entered the United States, being a laborer.   At the
examination he set up that he had a right to remain here, and that he
was a merchant.   The Commissioner found that on his departure from
the United States he was and had long been a laborer, and ordered his
deportation.   *Held*, that the decision of the Collector at Malone was not
final, and that by the act of October 1, 1888, c. 1064, the certificate issued
to him by the Chinese consul on his departure from the United States was
annulled.

*Fong Yue Ting* v. *United States*, 149 U. S. 698, affirmed and followed, espe-
cially to the points: (1) That the provision of the statute which puts the
burden of proof upon the alien of rebutting the presumption arising from
his having no certificate, as well as the requirement of proof " by at least
one credible white witness, that he was a resident of the United States at
the time of the passage of the act," is within the acknowledged power of
every legislature to prescribe the evidence which shall be received, and the
effect of that evidence in the courts of its own government; (2) that the
requirement not allowing the fact of residence here at the time of the pas-
sage of the act to be proved solely by the testimony of aliens in a like sit-
uation was a constitutional provision; and (3) that the question whether,
and upon what conditions these aliens shall be permitted to remain within
the United States, being one to be determined by the political depart-
ments of the Government, the judicial department cannot properly ex-
press an opinion upon the wisdom, the policy, or the justice of the
measures enacted by Congress in the exercise of the powers confided to
it by the Constitution over this subject.

In June, 1893, Li Sing, a native of China, but then a resident

of Newark, New Jersey, returned to China and took with him a certificate purporting to have been issued by the imperial government of China, at its consulate at New York, and signed by its consul, that he was permitted to return to the United States and was entitled to do so, and which, furthermore, styled him a wholesale grocer. This certificate was *viséd* in Hong Kong by the United States consul on June 27, 1896, when Li Sing was about to return to this country. He thereafter returned by the way of Canada, presented the certificate to the United States collector of customs at Malone, New York, who cancelled it on August 28, 1896, and permitted him to enter the country.

On January 6, 1897, the United States officer, who is called the United States inspector for the port of New York, represented in writing and under oath to John A. Shields, United States commissioner for the Southern District of New York, that Li Sing had unlawfully entered the United States, was unlawfully within that district, and that he was and had been for many years a Chinese laborer. Whereupon he was brought before the commissioner for examination. It was claimed by the counsel for Li Sing before the commissioner that by the action of the collector of customs at Malone the question of the Chinaman's right to be and remain in this country was *res adjudicata*, and also that he was a merchant. Testimony as to his status as a merchant was given by Chinese witnesses exclusively, which was received by the commissioner, notwithstanding the objection of the attorney of the United States. The commissioner found, upon all the evidence, that Li Sing was, at the time of the examination, a Chinese laborer, that he was such at the time he departed for China, and for several years prior thereto, and was such after his return from China in August, 1896.

The commissioner ordered his deportation, but did not order imprisonment as a punishment or penalty. A writ of *habeas corpus* and a writ of certiorari were thereupon allowed by the Circuit Court for the Southern District of New York upon Li Sing's petition. After a hearing the writ of *habeas corpus* was dismissed, and the relator was remanded to the custody of the

United States marshal for deportation. An appeal was then taken by the relator from the order of the Circuit Court to the Circuit Court of Appeals for the Second Circuit, and, on April 7, 1898, that court affirmed the order of the Circuit Court.

A writ of certiorari was thereafter, on February 1, 1899, allowed by this court.

*Mr. W. C. Beecher* for Li Sing.

*Mr. Assistant Attorney General Hoyt* for the United States.

MR. JUSTICE SHIRAS, after making the above statement, delivered the opinion of the court.

The first contention on behalf of the petitioner is that the collector of customs at Malone had exclusive jurisdiction to hear and determine the right of petitioner to enter the country ; that any error committed by the collector could only be reviewed by the Secretary of the Treasury, and that, consequently, the commissioner had no jurisdiction to act in the present case.

This contention is based upon the provisions of section 12 of the act of September 13, 1888, 25 Stat. 476, c. 1015, as follows : " And the collector shall in person decide all questions in dispute, with regard to the right of any Chinese passenger to enter the United States, and his decision shall be subject to review by the Secretary of the Treasury, and not otherwise."

Doubtless, if this section had gone into effect and had continued to be in effect until August 27, 1896, when the collector at Malone acted in the matter, his decision would have been final as to the questions passed on by him. But the act of September 13, 1888, was passed to take effect upon the ratification of a treaty then pending between the United States and the Emperor of China, and it is conceded that such treaty never was ratified.

Thereupon, the treaty not having been ratified, the act of October 1, 1888, 25 Stat. 504, c. 1064, was passed, which declared that from and after its passage it should be unlawful for any Chinese laborer, who at any time before had been or was then,

or might thereafter be, a resident within the United States, and who had departed or might depart therefrom, and should not have returned before its passage, to return to or to remain in the United States, and that no certificates of identity, under which by the act of May 6, 1882, Chinese laborers departing from the country were allowed to return, should thereafter be issued, and it annulled every certificate of the kind which had been previously issued, and provided that no Chinese laborer should be permitted to enter the United States by virtue of any such certificate.

The effect of this act was considered by this court in the case of *Wan Shing* v. *United States*, 140 U. S. 424, decided May 11, 1891. In the opinion in that case the act of July 5, 1884, c. 220, 23 Stat. 115, was cited as still in force, which provided that any certificate given by the Chinese government, and *viséd* by the indorsement of the diplomatic or consular representative of the United States in China, shall be *prima facie* evidence of the facts set forth therein, and shall be produced to the collector of customs of the port in the district of the United States, at which the person named therein shall arrive, and after produced to the proper authorities of the United States whenever lawfully demanded, and shall be the sole evidence permissible on the part of the person so producing the same to establish a right of entry into the United States; but said certificate might be controverted and the facts therein stated disproved by the United States authorities.

In summing up a review of the existing acts of Congress, the court, in that case, through Mr. Justice Field, said:

"The result of the legislation respecting the Chinese would seem to be this, that no laborers of that race shall hereafter be permitted to enter the United States, or even to return after having departed from the country, though they may have previously resided therein and have left with a view of returning."

The counsel for the petitioner cite cases in some of the Circuit Courts of the United States in which it has been held that some of the provisions of the act of September 13, 1888, notwithstanding the treaty was not ratified, could be regarded as in force.

Without finding it necessary to say that there are no provisions in the act of September 13, 1888, which, from their nature, are binding on the courts, as existing statements of the legislative will, we are ready to hold that section 12 of that act cannot be so regarded. In the act of August 18, 1894, 28 Stat. 390, it was provided that " in every case where an alien is excluded from admission into the United States under any law or treaty now existing or hereafter made, the decision of the appropriate immigration or custom officers, if adverse to the admission of such alien, shall be final, unless reversed on appeal to the Secretary of the Treasury."

And in the case of *Lem Moon Sing* v. *United States*, 158 U. S. 538, 547, it was held, expounding the act of August 18, 1894, that the decision of the appropriate immigration or custom officers, excluding an alien from admission into the United States under any law or treaty, is made final in every case, unless, on appeal to the Secretary of the Treasury, it be reversed. But it is obvious that it is only when the decision of the customs officer excludes an alien from admission that his decision is final. When his decision admits the alien, then the provisions of the act of July 5, 1884, are still applicable, which provide that, notwithstanding the contents of the certificate exhibited to the collector of customs, and their *prima facie* effect, " said certificate may be controverted and the facts therein stated disproved by the United States authorities."

Accordingly, we agree with the courts below in holding that the judgment of the collector of customs at Malone did not conclude the Commissioner, and that the latter had authority, under the statutes, to hear and determine the question whether Li Sing was entitled to remain within the limits of the United States.

The decision of the collector of customs not being conclusive as to the right of the petitioner to enter the United States, much less as to his right to remain therein, we are brought to consider the errors assigned to the acts of the Commissioner in the proceedings before him.

Those proceedings were instituted under section 12 of the act of May 6, 1882, as amended by the act of July 5, 1884,

c. 220, 23 Stat. 115, which provides that "no Chinese person shall be permitted to enter the United States by land, without producing to the proper officer of customs the certificate in this act required of Chinese persons seeking to land from a vessel. And any Chinese person found unlawfully within the United States shall be caused to be removed therefrom to the country from whence he came." Such required certificate in regard to persons not laborers, as specified in the sixth section of the said amended act, was to be obtained from the Chinese government by every Chinese person, other than a laborer, who was about to come to the United States, and was for the purpose of identifying the person and evidencing the permission of the government for his departure. The section provides that this certificate "shall be produced to the collector of customs of the port in the district in the United States at which the person named therein shall arrive, and afterwards produced to the proper authorities of the United States, whenever lawfully demanded, and shall be the sole evidence permissible on the part of the person so producing the same to establish a right of entry into the United States; but said certificate may be controverted and the facts therein stated disapproved by the United States authorities."

The certificate produced by the petitioner, of which we are furnished with a copy, bears date the 13th day of June, 1893, purports to permit Li Sing to return to and remain within the United States, and states that he was a wholesale grocer. But it appears, on the face of the certificate, that it was not issued to Li Sing by the Chinese government when he was about to return from China to the United States, as prescribed in the sixth section of the act of July 5, 1884, but was a paper he had procured from the Chinese consul at New York before he left the United States. Such a paper can scarcely be regarded as the certificate provided for in the act of Congress, which, in terms, declares that "in order to the faithful execution of the provisions of this act, every Chinese person, other than a laborer, who may be entitled by said treaty or this act to come within the United States, and who shall be about to come to

the United States, shall obtain the permission of and be identified as so entitled by the Chinese government."

Without, however, insisting that the certificate produced was not, in form and substance, within the act of July 5, 1884, and even if it were conceded that it was so, yet such a question was rendered irrelevant by the act of November 3, 1893, c. 14, 28 Stat. 7, which, in its second section, provided that " where an application is made by a Chinaman for entrance into the United States on the ground that he was formerly engaged in this country as a merchant, he shall establish by the testimony of two credible witnesses other than Chinese the fact that he conducted such business as hereinbefore defined for at least one year before his departure from the United States, and that during such year he was not engaged in the performance of any manual labor, except such as was necessary in the conduct of his business as such merchant, and in default of such proof shall be refused landing."

It is not pretended that any such evidence was produced by the petitioner before the collector of customs, and it is conceded that the latter acted, in admitting Li Sing to enter the United States, solely on the strength of the certificate. Accordingly, under the provisions of the several statutes hereinbefore cited, it was not only competent for the Commissioner to permit the allegations of the certificate to be controverted, but also to insist on the production of the evidence prescribed as necessary by the second section of the act of November 3, 1893.

As the Commissioner found, upon all the evidence, that Li Sing was a Chinese laborer, was such at the time he departed from China and for a term of years prior thereto, and has remained such since his return from China, his order of deportation was a legitimate conclusion and should be carried into effect, unless it can be made to appear either that the Commissioner failed to obey the statutes under which he was acting, or that the provisions of those statutes, applicable to the facts of the present case, are unconstitutional and void.

We do not understand it to be asserted, on behalf of the petitioner, that the Commissioner disregarded, in any particular, the provisions of the several statutes; but it is claimed that

some of those provisions are invalid, and that, therefore, the sentence of deportation should be set aside.

The petitioner's counsel assails the validity of the third section of the act of 1892, in the following terms:

"That any Chinese person or person of Chinese descent arrested under the provisions of this act or the acts hereby extended shall be adjudged to be unlawfully within the United States, unless such person shall establish by affirmative proof, to the satisfaction of such justice, judge or commissioner, his lawful right to remain in the United States."

It is said that it was not competent for Congress to cast the burden of proof upon the petitioner. This precise question was determined by this court in the case of *Fong Yue Ting* v. *United States*, 149 U. S. 698, 729. It was there said:

"If no evidence is offered by the Chinaman, the judge makes the order of deportation, as upon a default. If he produces competent evidence to explain the fact of his not having a certificate, it must be considered by the judge; and if he thereupon appears to be entitled to a certificate, it is to be granted to him. If he proves that the collector of internal revenue has unlawfully refused to give him a certificate, he proves 'an unavoidable cause,' within the meaning of the act, for not procuring one. If he proves that he had procured a certificate which has been lost or destroyed, he is to be allowed a reasonable time to procure a duplicate thereof. The provision which puts the burden of proof upon him of rebutting the presumption arising from his having no certificate, as well as the requirement of proof 'by at least one credible white witness that he was a resident of the United States at the time of the passage of the act,' is within the acknowledged power of every legislature to prescribe the evidence which shall be received, and the effect of that evidence, in the courts of its own government.' *Ogden* v. *Sanders*, 12 Wheat. 349; *Pillow* v. *Roberts*, 13 How. 472, 476; *Cliquot's Champagne*, 3 Wall. 114, 143; *Ex parte Fisk*, 113 U. S. 713, 721; *Holmes* v. *Hunt*, 122 Mass. 505, 519."

Again, it is contended that section 2 of the act of November 3, 1893, c. 14, 28 Stat. 7, prescribing that "where an application is made by a Chinaman for entrance into the United States on

the ground that he was formerly engaged in this country as a merchant, he shall establish by the testimony of two credible witnesses, other than Chinese, the fact that he conducted such business as hereinbefore defined for at least one year before his departure from the United States," etc.; is violative of the Constitution which guarantees equal rights and equal laws to all.

This argument was also considered in the case of *Fong Yue Ting* v. *United States*, and it was said:

"The competency of all witnesses, without regard to their color, to testify in the courts of the United States, rests on acts of Congress, which Congress may, at its discretion, modify or repeal. Rev. Stat. 558, 1977. The reason for requiring a Chinese alien, claiming the privilege of remaining in the United States, to prove the fact of his residence here, at the time of the passage of the act, 'by at least one credible white witness,' may have been the experience of Congress, as mentioned by Mr. Justice Field in *Chae Chan Ping's* case, that the enforcement of former acts, under which the testimony of Chinese persons was admitted to prove similar facts, 'was attended with great embarrassment, from the suspicious nature, in many instances, of the testimony offered to establish the residence of the parties, arising from the loose notions entertained by the witnesses of the obligation of an oath.' 130 U. S. 598. And this requirement, not allowing such a fact to be proved solely by the testimony of aliens in a like situation, or of the same race, is quite analogous to the provision which has existed for seventy-seven years in the naturalization laws, by which aliens applying for naturalization must prove their residence within the limits and under the jurisdiction of the United States, for five years next preceding, 'by the oath or affirmation of citizens of the United States.' . . .

"The proceeding before a United States judge, as provided for in section 6 of the act of 1892, is in no proper sense a trial and sentence for a crime or offence. It is simply the ascertainment, by appropriate and lawful means, of the fact whether the conditions exist upon which Congress has enacted that an alien of this class may remain within the country. The order of deportation is not a punishment for crime. It is not a banishment,

in the sense in which that word is often applied to the expulsion of a citizen from his country by way of punishment. It is but a method of enforcing the return to his own country of an alien who has not complied with the conditions upon the performance of which the government of the nation, acting within its constitutional authority, and through the proper departments, has determined that his continuing to reside here shall depend. He has not, therefore, been deprived of life, liberty or property, without due process of law; and the provisions of the Constitution, securing the right of trial by jury, and prohibiting unreasonable searches and seizures, and cruel and unusual punishments, have no application."

It may be proper here to mention that this court has held that, while the United States can forbid aliens from coming within their borders, and expel them from the country, and can devolve the power and duty of identifying and arresting such persons upon executive or subordinate officials, yet, when Congress sees fit to further promote such a policy by subjecting the persons of such aliens to infamous punishment at hard labor, or by confiscating their property, such legislation, to be valid, must provide for a judicial trial to establish the guilt of the accused. *Wong Wing* v. *United States*, 163 U. S. 228.

We cannot, however, yield to the earnest contention made in behalf of inoffensive Chinese persons who seek to come within the limits of the United States and subject themselves to their jurisdiction, by modifying or relaxing, by judicial construction, the severity of the statutes under consideration. We can but repeat what was said to similar appeals in the case of *Fong Yue Ting* v. *United States*, above cited: "The question whether, and upon what conditions, these aliens shall be permitted to remain within the United States, being one to be determined by the political departments of the government, the judicial department cannot properly express an opinion upon the wisdom, the policy or the justice of the measures enacted by Congress in the exercise of the powers confided to it by the Constitution over this subject."

The judgment of the Circuit Court of Appeals, affirming the order of the Circuit Court, is

*Affirmed.*