[Civil No. 902.    Filed March 22, 1907.]

[89 Pac. 525.]

## UNITED STATES OF AMERICA, Appellant, v. QUONG CHEE, Appellee.

1. ALIENS—CHINESE—EXCLUSION ACT—CERTIFICATE OF IDENTIFICATION —EVIDENCE—ACT OF JULY 5, 1884—SEC. 6, CHAP. 220, 23 STAT. 116 (U. S. COMP. STATS. 1901, P. 1307), CONSTRUED.—Where a Chinese person, being a former resident merchant of the United States, visited China *animo revertendi*, and, after his return to the United States was arrested and tried upon the charge of being unlawfully in the United States, it was not error for the court to receive in evidence a certificate granted him upon his return from China which stated that it was issued under section 6, *supra*, though it does not state that he is entitled by the said act to come into the United States.

2. SAME—SAME—EVIDENCE—ADMISSIBILITY—ACT JULY 5, 1884—SEC. 6, CHAP. 220, 23 STAT. 116 (U. S. COMP. STATS. 1901, P. 1307), CONSTRUED.—Upon the trial of a Chinese person charged with being unlawfully in the United States, he having been landed as a merchant by the customs officers upon his return from a visit to China and the production of the certificate stating that it was issued under section 6, *supra*, entitling defendant, a Chinese person other than a laborer, coming to the United States, said certificate not being controverted by the government is not by law the only evidence admissible, and he may show by white witnesses that he had been a merchant in the ·United States.

3. SAME—SAME—SAME—SAME—SAME.—When a Chinese person is being tried for being unlawfully in the United States, and is entitled under the law to show by white witnesses that he has been a merchant in the United States, the fact that defendant has not produced this evidence before the collector of customs upon his admission to the

United States does not bar its introduction, as at the time of his admission the proof was not required by law.

4. Aliens—Chinese—Exclusion Acts — Construction — Evidence — Act May 5, 1892, chap. 60, sec. 2, 27 Stat. 25 (U. S. Comp. Stats. 1901, p. 1319), Construed.—Upon a trial of a Chinese person charged with being unlawfully in the United States, said person having been a resident of the United States for twenty-five years and having three times visited his native country and returned, and the issue being his right to remain in the country, the obligation to establish such right "by affirmative evidence to the satisfaction of the court," as provided by statutes, *supra,* would entitle him to the introduction of any affirmative evidence necessary thereto.

5. Same—Same—Same—Same—Same.—Upon the trial of a Chinese person charged with being unlawfully in the United States, being a Chinese laborer, where defendant introduced in evidence a certificate granted him upon his return from a visit to China, which stated that he was a Chinese person other than a laborer, his testimony that since his return he was engaged in merchandising and in the restaurant business did not contradict the statement of the certificate.

6. Aliens—Chinese Exclusion Act—Construction.—A Chinese who was a resident merchant in the United States prior to the legislation relative to the exclusion of Chinese laborers, which provides that Chinese laborers then residents in the United States might obtain a certificate entitling them to remain, and who is in possession of a merchant's certificate providing for his re-entry after a temporary absence, cannot be held to be unlawfully in the United States because he has become a restaurant-keeper and has no laborer's certificate, since at the time of the issuance of laborer's certificates he was a merchant and could not have obtained such a certificate.

APPEAL from a judgment of the District Court of the Third Judicial District. Edward Kent, Judge. Affirmed.

Quong Chee, a Chinese person, came from China to the United States in the year 1871, and from that time until 1891 was a merchant in Phœnix, Arizona. In 1880 he returned to China, and stayed there ten months, re-entering the United States in 1881, and in 1891, while still a merchant in Phœnix, he again returned to China, from which place he again re-entered the United States in 1897, and remained thereafter for several months in Phœnix, attempting to collect debts resulting from his business as a merchant in and prior to 1891. He removed thereafter from Phœnix to Globe, Arizona, where he was for five or six years a restaurant-keeper. In 1904, while so engaged, he was arrested upon the charge of

being unlawfully in the United States, "he being a Chinese person, a laborer without the certificate required by law," and was taken before a United States commissioner, by whom he was ordered deported, from which order he appealed to the district court of the third judicial district. Upon the trial in the district court, the United States offered testimony to show that the defendant was a Chinese person, born in China, and rested. The defendant then offered in evidence a merchant's certificate, viséd by United States vice-consul at Canton, China, December 24, 1896, upon which he was landed from the ship "Gaelic," by the collector and inspector of the port of San Francisco on January 27, 1897, and his own testimony, and, when he offered the testimony of two white witnesses, the United States admitted: "That defendant came to the United States in 1871, and remained here until 1880, and then returned to China and stayed there ten months, returning to the United States in 1881, and remained here, and, from that time until 1891, was a merchant in Phœnix, Arizona, and during said time doing no manual labor, and that those facts can be established in this court by the testimony of two white witnesses. That in 1891, while still a mechant in Phœnix, he returned to China. That in 1897 the defendant returned to the United States, and came to Phœnix, remained in Phœnix a short time, and for the last five or six years has been a restaurant-keeper in Globe, Arizona, and was engaged in that business in Globe, Arizona, when arrested upon the complaint in this case." Defendant then rested, and the United States then read in evidence depositions that had been taken and filed in the case, touching the business in which defendant had been engaged since coming to Globe. The case was then submitted, and the court found that "the defendant was a Chinese person, and that he came to the United States from China in the year 1871, and from that time until 1891 was a merchant in Phœnix, Arizona, and that in 1891, having done no manual labor for more than one year prior thereto, he returned to China for a temporary purpose, and with the intention of returning to the United States. That in the year 1897 he returned to the United States, and remained several months in Phœnix attempting to collect debts, doing no manual labor, and that some time thereafter he became a restaurant-keeper in Globe, Arizona, which occupation he was pursuing at the time of his arrest." From

these facts, the court found that "the defendant, at the time
of his departure from the United States in 1891, and the time
of his return thereto in 1897, was a Chinese merchant of the
United States, and at the time of his arrest entitled to re-
main within the United States," and ordered his discharge
from custody.  From the judgment of the district court, and
the denial of a motion for a new trial, the United States at-
torney appealed, and has assigned as errors that the court
erred: 1. In overruling plaintiff's objection to the introduc-
tion in evidence of the merchant's certificate, for the reason
that it fails to comply with the statute, which requires that
the certificate shall state " . . . that such person is entitled
by this act to come into the United States." 2. After ad-
mitting the certificate in evidence, in overruling the plaintiff's
objection to the defendant's offer of testimony of two white
witnesses to show that he had been engaged as a merchant
in Phœnix, Arizona, from the year 1871 to the year 1891, and
that during that time he had performed no manual labor,
for the reasons (1) that the certificate which had been ad-
mitted in evidence is made by law the sole evidence per-
missible on the part of the person so producing the same
to establish a right of entry into the United States; (2) that
the testimony offered is immaterial, for the reason that the
defendant, as shown by the said certificate, had been a resi-
dent merchant of China from 1891 to 1897, and had there-
fore forfeited any right he might otherwise have had to
enter the United States as a resident merchant of the United
States; (3) it not being shown or offered to be shown that
the defendant had adduced this testimony before the col-
lector of customs upon his admission to the United States
in 1887, at which time the certificate disclosed that he had
entered the United States, he could not now make such proof.
3. In overruling the objection of the United States to the ad-
mission of defendant's testimony in his own behalf, for the
reasons (1) that by law, the certificate, which was admitted
in evidence, is "the sole evidence permissible on the part
of the person so producing the same, to establish a right of
entry to the United States; (2) that the testimony disclosed,
and each question tended to elicit, facts contradictory of the
certificate, on which he rested his claim to the right to enter
the United States.  4. In entering judgment for the defend-
ant, for the reason that the evidence discloses that the de-
fendant is a Chinese person unlawfully in the United States,

in that (1) he is a laborer without the required laborer's certificate of residence; (2) he is a laborer, and entered the United States at a time when Chinese laborers were denied admission into the United States.    5. In denying the motion for a new trial upon the further grounds that the evidence does not sustain the judgment.

Frederick S. Nave, United States Attorney, and John H. Campbell, Assistant United States Attorney, for the United States.

The burden to establish his right to be in the United States is by law cast upon the defendant. Sec. 3, Act of Cong. May 5, 1892, 27 Stat. 25.    The district court erred in overruling plaintiff's objection to the admission in evidence of the merchant's certificate offered by defendant and admitted in evidence, for the reason that it failed to comply with the statute which requires that the "certificate shall state . . . that such person is entitled by this act to come within the United States." *United States* v. *Gin Hing,* 8 Ariz. 416, 76 Pac. 639, 640; *Cheung Pang* v. *United States,* 133 Fed. 392, 66 C. C. A. 454; *United States* v. *Pin Kwan,* 100 Fed. 609, 40 C. C. A. 618; *United States* v. *Chu Chee,* 93 Fed. 797, 35 C. C. A. 613.    After admitting the certificate in evidence, the court erred in overruling the plaintiff's objection to the defendant's offer of two white witnesses to show that he had been engaged as a merchant in Phœnix, Arizona, from the year 1871 to the year 1891, and that during that time he had performed no manual labor.    The certificate which had been admitted in evidence is made by law "the sole evidence permissible on the part of the person so producing the same to establish a right of entry into the United States."    Sec. 6, Act Cong. of July 5, 1884, 23 Stat. 116.    Even were testimony admissible to supplement the certificate, the offer made was inadmissible by reason of the fact that the place of residence and manner of business of the defendant at some former time were immaterial under the evidence already in. By taking up his residence in Chick Hom, China, and by taking up the business of merchant there, the defendant unquestionably forfeited all rights (if any there were) acquired by him during a former period of residence within the United States.    *Wan Shing* v. *United States,* 140 U. S. 424, 11 Sup. Ct. 729, 35 L. Ed. 503; interpreted in the latter part of the

opinion in *Lau Ow Bew* v. *United States*, 144 U. S. 47, 12 Sup. Ct. 517, 36 L. Ed. 340. When on January 23, 1897, the defendant sought to be landed in San Francisco from the steamship "Gaelic," it was his duty, under the law, to make proof to the collector of customs of his right to enter the United States. Sec. 12, Act Cong. Sept. 13, 1888, 25 Stat. 478; *Li Sing* v. *United States*, 180 U. S. 486, 21 Sup. Ct. 449, 45 L. Ed. 634; *United States* v. *Sing Tuck*, 194 U. S. 161, 24 Sup. Ct. 621, 48 L. Ed. 917. Every Chinese person, unless he belongs to one of the classes expressly privileged by law to enter the United States, is classed as a "laborer" within the meaning of the statute. Specifically, a restaurant-keeper is a laborer. *United States* v. *Chung Ki Foon*, 83 Fed. 143; *Re Ah Yow*, 59 Fed. 561; *Mar Bing Guey* v. *United States*, 97 Fed. 576; *Lee Ah Yin* v. *United States*, 116 Fed. 614, 54 C. C. A. 70; *United States* v. *Ah Fawn*, 57 Fed. 591; *United States* v. *Pin Kwan*, 100 Fed. 609, 40 C. C. A. 618. Since this case was tried, it has been finally and authoritatively decided by the circuit court of appeals that though a Chinese person entered the United States as a merchant, afterward having become a laborer he must be deported. *Cheung Him Nin* v. *United States*, 133 Fed. 391, 66 C. C. A. 453. The purpose of the Chinese exclusion laws is to effect an absolute prohibition of entry into the United States of Chinese persons who shall compete with American labor. A Chinese person coming into the United States with a merchant's certificate and under pretense that he is a merchant, who thereafter becomes a laborer, has perpetrated a fraud upon the United States. This has been authoritatively determined prior to the trial of this case. *United States* v. *Yong Yew*, 83 Fed. 832; *United States* v. *Ng Park Tan*, 86 Fed. 605; *United States* v. *Pin Kwan*, 100 Fed. 609, 40 C. C. A. 618.

DOAN, J.—The first error assigned is the admission in evidence of the merchant's certificate, granted him on his last return from China in 1897, the ground of the objection being that the certificate fails to comply with the statute which requires that it should state that he is entitled by virtue of act of July 5, 1884, chapter 220, 23 Stat. 116 (U. S. Comp. Stats. 1901, p. 1307), to come within the United States. The certificate was placed in evidence, and appears in the record. It stated: "This certifi-

cate is issued under section 6 of the act of Congress of the United States, approved July 5, 1884, . . . to Quong Chee, a Chinese person other than a laborer, who is about to come to the United States, as a means of establishing his identity. It shall be *prima facie* evidence of his right to land in the United States, of which he was a former resident, having resided at Phœnix, Maricopa county, Arizona, where he is a partner of the firm known as 'Kwan Lung,' holding a share in said firm in the sum of $2,000. . . . " In passing upon the sufficiency of this certificate, and the strictness with which it should be interpreted, it would be well to bear in mind that the defendant, Quong Chee, was a resident merchant in the United States, and had been for nearly ten years, at the time of the supplemental treaty of November 17, 1880 (22 Stat. 826), which recites, among other things: "Whenever, in the opinion of the government of the United States, the coming of Chinese laborers to the United States, or their residence therein, affects . . . the government of the United States may regulate, limit or suspend such coming or residence. . . . The limitations or suspensions shall be reasonable, and shall apply only to Chinese who may go to the United States as laborers, other classes not being included in the limitations. . . . Chinese subjects, whether proceeding to the United States as teachers, students, merchants or from curiosity, together with their body and household servants, and Chinese laborers who are now in the United States shall be allowed to go and come of their own free will and accord, and shall be accorded all the rights, privileges, immunities and exemptions which are accorded to the citizens and subjects of the most favored nation." While congressional acts passed thereafter imposed many and severe limitations on the coming and residence of Chinese laborers, there was a positive prohibition in this treaty on their placing any limitations on the coming or residence of Chinese merchants, and the United States supreme court has said, in the case of *Lau Ow Bew* v. *United States,* 144 U. S. 47, 12 Sup. Ct. 517, 36 L. Ed. 340: "Nothing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or absurd conclusion." The certificate in question states that it was issued under section 6 of the act of July 5, 1884, to Quong Chee, a Chinese person, other than a laborer, who was about to come to the United States, as a means

of establishing his identity, and "it shall be *prima facie* evidence of his right to land in the United States, of which he is a former resident, having resided at Phœnix, Maricopa county, Arizona, where he is a partner in the firm. . . . " This is equivalent to stating that he is entitled to come within the United States, and, although it does not state that he is "entitled by this act," it does state that it was issued under section 6 of "this act," and it might have been a very serious question with those who issued the certificate in China, and those who landed him in San Francisco, and we believe it is now a very serious question, whether he was "entitled by this act" to come into the United States. It might have been as appropriate to say, that by virtue of his residence in this country before the passage of this act, and the protection which he received as a Chinese resident merchant in this country under the treaty between this country and China against any limitations on his coming or residence, and the assurance that he shall "be allowed to go and come of his own free will and accord, and shall be accorded all the rights, privileges and immunities and exemptions which are accorded to the citizens and subjects of the most favored nation," that he was entitled to re-enter this country notwithstanding this act; in other words, while this act may not have entitled him to re-enter the United States, that his status was such that this act could not, under his treaty rights, avail to prevent such re-entry. The United States supreme court in the case of *Lau Ow Bew* v. *United States,* 144 U. S. 47, 12 Sup. Ct. 517, 36 L. Ed. 340, has, in line with this reasoning, said: "Chinese merchants domiciled in the United States, and in China only for temporary purposes, *animo revertendi,* do not appear to us to occupy the predicament of persons 'who shall be about to come to the United States' when they start on their return to the country of their residence and business. The general terms used should be limited to those persons to whom Congress manifestly intended to apply to them, and they should evidently be those who are about to come to the United States for the first time, and, therefore, might properly be required to apply to their own government for permission to do so, as also to so identify them as to distinguish them as belonging to the class who could properly avail themselves of such leave. Chinese merchants, while domiciled in the United States, have, and are entitled to exercise, the rights of free egress and in-

gress, and all other rights, privileges and immunities enjoyed in this country by the citizens and subjects of the 'most favored nation.' There can be no doubt, as was said by Mr. Justice Harlan, speaking for the court in *Chew Heong* v. *United States,* 112 U. S. 536, 549, 5 Sup. Ct. 255, 28 L. Ed. 770, 773, that 'since the purpose avowed in the act was to faithfully execute the treaty, any interpretation of its provisions ·would be rejected which imputes to Congress any intention to disregard the plighted faith of the government, and, consequently, the court ought, if possible, to adopt that construction which recognized ánd saved rights secured by the treaty.' Tested by this rule, it is impossible to hold that this section was intended to prohibit or prevent Chinese merchants, having a commercial domicile here, from leaving the country for temporary purposes and then returning to and re-entering it. The United States statutes do not now, nor have they ever, required or provided for the issue of any certificate in this country to resident Chinese other than laborers, who are about to depart temporarily, for business or pleasure, either to China or other foreign countries. . . . We are of the opinion that it was not intended that commercial domicile should be forfeited by temporary absence at the domicile of origin, nor that resident merchants should be subjected to loss of rights guaranteed by treaty, if they failed to procure from the domicile of origin that evidence which residence in the domicile of choice may have rendered it difficult, if not impossible, to obtain.''

The second error assigned was the overruling of plaintiff's objection to the defendant offering to show by two white witnesses that he had been engaged as a merchant in Phœnix from the year 1871 to 1891, for the reason: First, that the certificate which had been admitted in evidence is made by law the sole evidence permissible on the part of the person so producing the same to establish a right of entry into the United States. In support of this, counsel for the appellant has cited the case of *Wan Shing* v. *United States,* 140 U. S. 424, 11 Sup. Ct. 729, 35 L. Ed. 503, and *United States* v. *Gin Hing,* 8 Ariz. 416, 76 Pac. 639. The first was an action on *habeas corpus* that arose from the customs officer refusing to allow Wan Shing to be landed in the port of San Francisco upon his representation that he had formerly been a merchant in San Francisco, and had temporarily left the United States on April 19, 1882, and had just arrived

on his return on August 7, 1889, the customs officer contending that he was a Chinese laborer, and therefore prohibited from landing by virtue of the provisions of the Chinese exclusion act, whether he had formerly resided in this country or not, as no provision was then made for the re-entering of Chinese laborers upon their return to this country from China. Evidence was taken, however, to determine his status, and his consequent right to land, and as was said by Mr. Justice Field: "No certificate was presented by the petitioner, under the statute, saying that he was entitled to enter the United States, nor was any attempt made to account for its absence. The evidence, offered to show that the petitioner was a merchant, was weak and unsatisfactory, but the statute itself does away with the necessity for any investigation by the court as to its sufficiency, for it discloses that while the certificate may be controverted by the authorities of the United States, and is to be taken by them only as *prima facie* evidence, it shall constitute the only evidence permissible on the part of the person producing the same, to establish his right to enter the United States." The case at bar is one wherein the right of the defendant is challenged to remain in this country seven years after he had been landed here as a merchant by the proper customs officers, on his return from a visit to China. In the case of Gin Hing, the appellant, when ordered by the United States commissioner to be deported, presented a certificate, stating that his occupation at date of its issue was that of a salesman. The certificate was not controverted by the United States, but he attempted to prove by other testimony in the district court that for many years prior to coming to the United States, and at the time of his coming, he was, and ever since had been, a merchant. We held in *United States* v. *Gin Hing,* 8 Ariz. 416, 76 Pac. 639, that such testimony in contradiction of a certificate that was not controverted by the government was inadmissible, upon the ground that the certificate, being *prima facie* evidence of the facts set forth therein, to be produced to the collector of the port, and afterward to the proper authorities of the United States whenever lawfully demanded, and being the sole evidence permissible on the part of the person producing the same to establish a right of entry into the United States, although said certificate might be controverted, and the facts therein stated disproved by the United States authorities, could not, when uncontro-

verted by the government, be contradicted or disproved by the holder. It must be borne in mind that Gin Hing had entered the United States under the certificate in question, coming here for the first time; his was not a case of re-entering (after a temporary absence therefrom) this country, where he was unquestionably entitled to remain before such temporary absence. In his case, therefore, if his entry was unlawful, his residence was equally so. We held, therefore, that whether the case to be determined was one of his right to enter or his right to remain, the only question to be determined was whether he was a person entitled to enter. Of this the statute made the certificate, unless the same be controverted, the only proof admissible, whereas, in the case at bar, it was conceded that the defendant had been for many years a resident merchant of this country, and it was after his departure from this country on his last visit to China that the act approved November 3, 1893 (Act Nov. 3, 1893, c. 14, 28 Stat. 8 [U. S. Comp. Stats. 1901, p. 1322]), was enacted which required, in section 2: "Where application is made by a Chinaman for entrance into the United States, on the ground that he was formerly engaged in this country as a merchant, he shall establish by the testimony of two credible witnesses, other than Chinese, the fact that he conducted such business as hereinbefore defined, for at least one year before his departure from the United States, and that during such year he was not engaged in the performance of any manual labor, except such as was necessary in the conduct of his business as such merchant, and in default of such proof, shall be refused landing."

One of the grounds on which this assignment is based is that it is not shown that the defendant had adduced his testimony before the collector of customs upon his admission to the United States in 1897. Before the enactment of this law, the Treasury Department, on July 3, 1890, issued certain instructions regarding the re-entry into the United States of Chinese persons after a visit to China, one of which is as follows: "Chinamen who are not laborers, and who may have heretofore resided in the United States, are not prevented by existing laws or treaty from returning to the United States after visiting China or elsewhere. No certificates or other papers, however, are issued by the department, or by any of its subordinate officers, to show that they are entitled to land in the United States, but it is sug-

gested that such persons should, before leaving the United States, provide themselves with such papers of identity, as may be deemed proper, showing that they have been residents of the United States, and that they are not laborers, so that they can present the same to, and be identified by, the collector of customs of the port where they may return.'' It is possible that the defendant, who left in 1891, after the instructions just quoted were published, took that precaution, and for that reason his native government was able to certify in the certificate, as it did, that he was a former resident of Phœnix, Maricopa county, Arizona, and that he was at the time of its issuance a member of the firm of Kwan Lung in Phœnix, holding a share in said firm in the sum of $2,000, and as the requirement relative to the testimony of two witnesses other than Chinese was enacted two years after his departure from this country, and he would, therefore, be unable to produce such testimony to the collector of the port, it is probable that the collector of the port accepted the certificate, for that reason, without additional testimony, and, as his right to remain was questioned seven years after his re-entry here, and while such evidence was available here, it was but natural that he would offer to produce it. In the case of *In re Low Yam Chow*, 13 Fed. 605, 7 Saw. 546, it was held by the circuit court for the district of California, September 5, 1882, that Chinese merchants who resided at the passage of the act of Congress of May 6, 1882, in other countries than China, on arriving in a port of the United States, were not required by that act to produce certificates of the Chinese government, establishing their character as merchants, as a condition of their being allowed to land; but that their character as such merchants could be established by parol evidence. And Mr. Justice Field, delivering the opinion of the court, referring to section 6 of the act (Act May 6, 1882, c. 126, 22 Stat. 60 [U. S. Comp. Stats. 1901, p. 1307]), said: ''The certificate mentioned in this section is evidently designed to facilitate proof by Chinese, other than laborers coming from China and desiring to enter the United States, that they are not within the prohibited class. It is not required as means of restricting their coming. To hold that such was its object would be to impute to Congress a purpose to disregard the stipulation of the second article of the new treaty, that they should be allowed to go and come of their own free will and accord.''

And Judge Deady, in the district court for the district of Oregon, held, January 15, 1883, that the certificate provided for in section 6 was not the only competent evidence that a Chinese person is not a laborer, and therefore entitled to come to and reside within the United States; but the fact might be shown by any other pertinent and convincing testimony. In *Li Sing* v. *United States*, 180 U. S. 486, 21 Sup. Ct. 449, 45 L. Ed. 634, where Li Sing, a laborer, who left the United States in 1893, and re-entered the United States on August 28, 1896, as a merchant, and was, on January 6, 1897, arrested as a laborer, and the commissioner found upon all the evidence that he "was a Chinese laborer, was such at the time he departed from China, and had remained such since his return from China." The United States supreme court held, in reference to this requirement of the evidence of two witnesses: "It is not pretended that any such evidence was produced by the petitioner before the collector of customs, and it is conceded that the latter acted, in admitting Li Sing to enter the United States, solely on the strength of the certificate. Accordingly, under the provisions of the several statutes hereinbefore cited, it was not only competent for the commissioner to permit the allegations of the certificate to be controverted, but also to insist on the production of the evidence prescribed as necessary by the second section of the act of November 3, 1893." The ruling that it was competent for the commissioner to insist on the production of this evidence renders the introduction of it by the defendant competent.

Counsel for the appellant has assigned as error the introduction of the testimony of the defendant, for the reasons: (1) That "the certificate was the sole evidence permissible." While that has been held to be the case at the time of entry, where the certificate was not controverted by the United States, the case of Li Sing, *supra,* disposes of the objection in a case arising after entry, where the truth and correctness of the certificate is controverted, as in the case at bar, and sustains the defendant's right in such case to establish by other testimony his right to protection under the certificate. In this instance, the defendant had been for more than twenty years a Chinese merchant, domiciled in the United States, and while a merchant, as undeniably established by the evidence, and conceded by the government, he had twice gone to and returned from his native land, and he

was in this case being tried upon the charge of being a Chinese laborer, and with being unlawfully in the United States, because he was without the certificate of residence required by law of Chinese laborers. The act of Congress, approved May 5, 1892, c. 60, sec. 2, 27 Stat. 25 (U. S. Comp. Stats. 1901, p. 1319) commonly called the "Chinese Exclusion Act," provides: "Any Chinese person or person of Chinese descent arrested under the provisions of this act, or the acts hereby extended, shall be adjudged to be unlawfully within the United States, unless such person shall establish, by affirmative proof, to the satisfaction of such justice, judge or commissioner, his lawful right to remain in the United States." The issue presented was therefore his right to remain. The obligation to establish such right "by affirmative evidence to the satisfaction of such judge," would entitle him to the introduction of any affirmative evidence necessary thereto, and is not analogous to the procedure upon his offering to land from the vessel upon his re-entry.

The second reason given is "that the testimony discloses facts contradictory to the certificate on which he rested his claim to the right to enter the United States." The testimony has not been certified to this court, but an examination of the testimony of the defendant, as included in the bill of exceptions prepared and presented by the counsel for the appellant, fails to disclose any evidence contradictory of the certificate. The defendant did testify that after his re-entry, and after his removal from Phœnix to Globe, he was, during a considerable portion of the time, engaged in merchandising, and as proprietor of a restaurant. While there is nothing in this that contradicts the certificate, his last statement does raise what we consider the only question in this case, and that is, conceding that he was a resident merchant of this country for many years, and was properly re-entered on his return from China in 1897, and was engaged in merchandising for months thereafter, does the fact that he has ceased to be a merchant, and was at the time of his arrest keeping a restaurant, deprive him of the protection afforded by his former occupation? At the time of the enactment of the exclusion act, he was a resident of this country. If he had been a laborer at that time, he could have obtained a certificate of residence that would permit his residence here as a laborer for all time. As he was a merchant he could not receive such permit, nor was he re-

quired to have any permit.   Does this change of vocation from that of a merchant to that of a restaurant-keeper render him liable to deportation?   Or does the fact that he was a resident merchant of this country at the time of the exclusion act, and has not come into this country, as a laborer, since the enactment of that law, and that he was not a resident laborer at the date of the enactment of any of the laws that required laborers to secure certificates of residence, enable him to now remain in this country without a laborer's certificate, although he has changed his vocation from that of a merchant to that of a laborer?

The appellant has alleged that the court erred in entering judgment for the defendant, for the reasons (1) that the defendant is a laborer, without the required laborer's certificate; (2) that he is a laborer, and entered the United States at the time when Chinese laborers were denied admission to the United States.   The second ground is not well taken, in that his re-entry into the United States, although at a time when Chinese laborers were denied admission, was not as a laborer; but, as shown by the certificate, all the evidence, and the admission of the counsel for the appellant, such re-entry was as a merchant, and he was at that time in fact a merchant, had been such for years, and continued to be for some considerable time thereafter.   The first ground of this assignment presents, as we have stated, the only question in the case.   We have not been able to find in any of the cases cited an adjudication of the exact issue that is here presented; none of the cases cited have been more than persuasive.   There is abundant authority for holding that a Chinese laborer, who was a laborer resident here at the time of the enactment of the exclusion laws, or who has since that act entered as a laborer, who may be found in this country without a certificate, may be deported.   There is abundant authority for holding that a Chinese laborer who has fraudulently entered this country as a merchant may be arrested, and on the truth of the facts alleged in his merchant's certificate of entry being controverted, may be deported.   We have likewise found several cases where it has been held that Chinese merchants who have come into this country as merchants since the enactment of the exclusion law, and at a time when Chinese laborers were not permitted to enter this country, and thereafter changed their vocation and became laborers, have been held to be unlawfully in this country; but we have not found

any case where it has been held that a Chinese merchant, who was a *bona fide* resident merchant in this country prior to the treaty with China, and prior to any congressional legislation relative to the exclusion of Chinese laborers, and who, after having been domiciled in this country as a merchant for more than twenty-five years, and in possession of a merchant's certificate providing for his re-entering after a temporary absence, has been held to be unlawfully in this country because he has changed his vocation and has no laborer's certificate. Taking into consideration the evident intention of our congressional legislation, considering that a laborer who was domiciled here prior to the exclusion act is permitted to remain by procuring a certificate for his identity, and considering again that the merchant's certificate possessed by the defendant answers the purpose of identification as fully as would a laborer's certificate, we do not think that the deportation of the defendant in this case, or of a Chinese person under those conditions, was intended by the legislation on this subject.

The judgment of the lower court is affirmed.

SLOAN, J., concurs.

The CHIEF JUSTICE having tried the case in the court below, and CAMPBELL and NAVE, JJ., being of counsel, took no part in the determination of this cause.