UNITED STATES ex rel. HEN LEE v. SISSON, Chinese Inspector.

(Circuit Court of Appeals, Second Circuit. April 11, 1916.)

No. 280.

1. ALIENS ⬅️32(8)—CHINESE—EXCLUSION—EVIDENCE.
     Where a Chinese person, who claimed that he was born in San Francisco and lived there till 16, demonstrated his ignorance of the city, such fact is sufficient to warrant a finding that he was born, not in San Francisco, but in China, and to justify his deportation.

     [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 84; Dec. Dig. ⬅️32(8).]

2. ALIENS ⬅️32(10)—CHINESE PERSONS—DEPORTATION.
     Under Act Feb. 20, 1907, c. 1134, § 35, 34 Stat. 908 (Comp. St. 1913, § 4284), declaring that deportation of aliens arrested within the United States after entry and found to be illegally therein, shall be to the trans-Atlantic or trans-Pacific ports from which said aliens embarked for the United States, or, if such embarkation was for foreign contiguous territory, to the foreign port at which such aliens embarked for such territory, a Chinese person, who resided for a number of years in Canada before seeking entry into the United States, should, though a native and subject of China, be deported to Canada, instead of being returned to China.

     [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 92; Dec. Dig. ⬅️32(10).]

Appeal from the District Court of the United States for the Southern District of New York.

Application by the United States, on the relation of Hen Lee, alias Leong Hen Lee, for a writ of habeas corpus against Harry R. Sisson, as Chinese Inspector, etc. From an order denying the writ, relator appeals. Order of relator's deportation modified.

<hr>

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

R. M. Moore, of New York City (B. W. Berry, of New York City, of counsel), for appellant.

H. Snowden Marshall, U. S. Atty., of New York City (H. A. Content, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before WARD and ROGERS, Circuit Judges, and MAYER, District Judge.

WARD, Circuit Judge. [1] September 7, 1915, Hen Lee was arrested while attempting surreptitiously to enter the United States from Canada at Detroit. He was given a fair hearing before the Chinese and immigration inspector, before whom he testified that he was 25 years of age, was born in San Francisco, from where he removed in 1906 to New York, where he remained until 1910, when he sailed for China from Vancouver, returning to Canada in 1911, where he lived until he was arrested, as above stated, in 1915. Although no witness contradicted his testimony that he was born in San Francisco, the inspector did not believe it because his ignorance about a place in which he had lived until he was 16 was quite sufficient to discredit the statement. This finding is final. Tang Tun v. Edsell, 223 U. S. 673, 32 Sup. Ct. 359, 56 L. Ed. 606.

The relator was given an opportunity to call witnesses as to his birth, and also to have counsel, which offers he declined. The Acting Secretary of Labor, upon these proofs and the report of the Inspector, directed the relator to be deported to China. A writ of habeas corpus was taken out and dismissed, from which order this appeal is taken.

[2] There is no doubt that the relator should be deported from the United States under section 21 of the Act of 1907 (Comp. St. 1913, § 4270), because he is subject to deportation under the provisions of section 3 of the Chinese Exclusion Act of May 5, 1892, c. 60, 27 Stat. 25 (Comp. St. 1913, § 4317). The question is to what country should he be deported under section 35 of the act of 1907. His counsel contends that, as he had lived three or four years in Canada, it was the country from which he came, and to which, and not to China, he should be returned. The United States, on the other hand, insists that as he has been found to have been born in China he should be returned there.

Section 35 of the act of 1907 reads:

"That the deportation of aliens arrested within the United States after entry and found to be illegally therein, provided for in this act, shall be to the trans-Atlantic or trans-Pacific ports from which said aliens embarked for the United States; or, if such embarkation was for foreign contiguous territory, to the foreign part at which said aliens embarked for such territory." Comp. St. 1913, § 4284.

This provision literally applies to aliens found in the United States after entry, whereas this alien was arrested upon entry. Still the reason of the provision is equally applicable to an arrest in either case, and the question is whether the section contemplates an embarkation for foreign contiguous territory with intention to enter the United States via that territory, or whether it applies to any alien who lands in contiguous foreign territory, even if he does so with the intention

of staying, and even if he has actually established his domicile there, provided he afterwards attempts to enter the United States.

We think the former construction right. The country in which the alien was born is important only if the statute requires or authorizes him to be returned there, as in the provision of section 3 of the act of 1907 (Comp. St. 1913, § 4247) that he shall be "returned to the country whence he came, or of which he is a subject or a citizen," or as in the provision of section 2 of the Chinese Exclusion Act of 1892 (Comp. St. 1913, § 4316), that he "shall be removed from the United States to China, unless he or they shall make it appear to the justice, judge, or commissioner before whom he or they are tried that he or they are subjects or citizens of some other country, in which case he or they shall be removed from the United States to such country." If the deportation proceedings had been instituted under the Chinese Exclusion Acts, a different question would have arisen.

It is often intimated that an alien must be returned to the country of his nativity, because that was ordered in Lewis v. Frick, 233 U. S. 291, 34 Sup. Ct. 488, 58 L. Ed. 967. In that case a Russian, who had lived in the United States for several years, visited Canada for one day and returned with a prostitute. He was deported to Russia, which was the country of his nativity. It was also the country from which he originally came via London, as an examination of the transcript of record will show. Mr. Justice Pitney says:

"But since his offense was not discovered in time to permit of his physical exclusion, so that he becomes subject to the provisions for deportation, his destination ought not to be controlled by the factitious circumstance that he went into Canada to procure the prostitute. And, upon the whole, it seems to us that the act reasonably admits of his being returned to the land of his nativity, that being in fact the 'country whence he came' when he first entered the United States."

We think that the residence of this relator for three or four years in Canada before his attempt to enter the United States cannot be regarded as what Mr. Justice Pitney called a factitious circumstance. The Supreme Court in Lewis v. Frick, supra, left open the question whether "that part of the deportation order which determines the destination of the alien is open to inquiry upon habeas corpus," and we will therefore follow our previous practice by modifying the order of deportation by directing the alien to be returned to Canada.