UNITED STATES v. HEN LEE.

(District Court, S. D. New York. October 25, 1916.)

No. 14.

1. ALIENS ⬨⟶32(8)—DEPORTATION OF CHINESE—TESTIMONY—RIGHT TO REJECT.
Where a Chinese person, whose deportation was being sought, made contradictory statements at the time he was being smuggled into the United States, his subsequent testimony in conflict with such statements may be disregarded.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 84; Dec. Dig. ⬨⟶32(8).]

2. ALIENS ⬨⟶32(5)—DEPORTATION—CHINESE PERSON—BURDEN OF PROOF.
A Chinese person, who attempted to surreptitiously enter the United States, and whose right to remain therein was raised on deportation proceedings, has the burden of satisfactorily establishing his claim of right to remain in the United States.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 84; Dec. Dig. ⬨⟶32(5).]

3. ALIENS ⬨⟶32(8)—DEPORTATION—CHINESE PERSONS.
In proceedings for deportation of a Chinese person, apprehended when surreptitiously entering the United States, evidence *held* insufficient to establish his claim of birth in the United States and right to remain therein, and so deportation was warranted.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 84; Dec. Dig. ⬨⟶32(8).]

Proceeding by the United States for the deportation of Hen Lee. On appeal de novo from commission and order of deportation. Defendant ordered deported.

Edwin M. Stanton, Asst. U. S. Atty., of New York City.

B. W. Berry, of New York City, for defendant.

MANTON, District Judge. This is an appeal from an order of deportation entered against the defendant by a commissioner. The defendant, a Chinese person, without proper paper showing his right to be and remain in the United States, is a laborer. On September 4, 1915, together with three other Chinamen, he was apprehended while surreptitiously entering the United States from Canada, at Detroit. After arrest by an immigration inspector, a hearing was had, and after statement made by the defendant, to which reference is had in this proceeding, he was ordered deported to China, the country from whence he came. A writ of habeas corpus was issued, and this matter was reviewed before Judge Hough on November 5, 1915. The writ was there dismissed, and the relator remanded to the government for deportation.

---

⬨⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

An appeal was then taken by the defendant to the Circuit Court of Appeals, Second Circuit, which reversed the order of Judge Hough and ordered the relator deported to Canada. United States ex rel. Hen Lee v. Sisson, 232 Fed. 599, —— C. C. A. ——. The government, under the claim that the restrictive laws enforced in the Dominion of Canada including the exaction of a head tax of $500 for each Oriental entering Canada, has taken recourse to the Chinese Exclusion Law (Act May 5, 1892, c. 60, 27 Stat. 25 [Comp. St. 1913, §§ 4315–4323]), which provides for deportation to China irrespective of the country from whence an alien comes, and it has canceled the proceedings under the Immigration Act (232 Fed. 559) by failing to have modified the deportation order of the Circuit Court. This complaint was filed with the United States commissioner on April 19, 1916, and after a trial had before the commissioner the relator was ordered deported to China on July 14, 1916. The case is before this court on an appeal de novo.

[1-3] The sole question for my determination is whether or not the evidence warrants a finding that the defendant was born in the United States. A full hearing was had before a commissioner. Under Immigration Act Feb. 20, 1907, c. 1134, 34 Stat. 898, the defendant there made a statement, and later testified and produced witnesses. The commissioner found against the defendant, and Judge Hough in the District Court affirmed this finding. Later, on appeal to the Circuit Court of Appeals, the court, through Judge Ward, said:

"There is no doubt that the relator should be deported from the United States under section 21 of the act of 1907 [Comp. St. 1913, § 4270], because he is subject to deportation under the provisions of section 3 of the Chinese Exclusion Act of May 5, 1892 [Comp. St. 1913, § 4317]."

In this proceeding under the Chinese Exclusion Act the defendant produced witnesses as to his birth, and others who alleged that they saw him during various periods of his life in the United States. This testimony was rejected by the commissioner, as he has found that the evidence does not warrant a finding that the relator was born in the United States. Upon the hearing before this court the defendant testified that he was born in San Francisco; that his parents lost their lives in the earthquake in San Francisco, and his certificate of residence was also lost. He has no relatives here, no sisters or brothers. There is no public institution, such as a school or mission school of California, where his record of residence may be checked up by the government officials.

His claim of birth and residence in the United States must depend upon the testimony of Leong Chong, Sam Kee, Natalie Miarano, and Francesco Manfridi. All, with the exception of Leong Chong, claimed to have seen the relator in New York City for five or six years before it is claimed that he went to Canada, where the relator claims he worked in Montreal. Sam Kee makes claim that he played in the parks in San Francisco with the relator. His manner of testifying, and the many contradictions as to happenings and events in his own life and his meetings with the defendant, require me to reject his testimony as insufficient to base any finding that the defendant was in the United

States during the time that Kee claims to have seen or to have known him.

The only direct evidence of the birth in the United States is given by Leong Chong. This witness says he is 64 years of age; that he lived in Fresno, Cal., where he was engaged in business. In one part of his testimony he says he "belongs to the same family" as the defendant and later denies any relationship. He says that in 1890 he happened to go to San Francisco to attend to some business in connection with a store that he maintained at Fresno, and tried to purchase some goods for the store. He says:

"I just happened to meet the defendant's father in the street and asked him why he was not working, and he asked why I came to San Francisco, and I told I came out here to buy some goods for the store, and he told me about his family, that his wife was sick and was going to have a child pretty soon, and after the birth of the child the father invited me to stay there to attend the christening, his Hi How Chow."

His testimony as to his acquaintance with his father is very meager and is a general statement that he had known him for a considerable length of time. He denies acquaintance or knowledge of defendant's father in China. He states that he attended the head-shaving feast of the defendant in a restaurant in San Francisco, the number of which he cannot give. Later, while the witness was on his way to China, he stopped at San Francisco and saw the boy. Later he saw him in New York, and although he says he recognized the boy, he was obliged to ask, " 'You are Hen Lee?' to which the defendant said 'Yes,' and asked me my name, and I told him my name." He claims to have seen him in New York at a still later time. The witness appears to have been a friend of Leong Kai Main, who, it developed, was related to the defendant, and who was present in court and assisted counsel in interpretation. Still he was not called as a witness.

In answer to the court, this witness stated that he had been a witness in only one other such case as this, and that at Port Henry, N. Y. At the next hearing, the United States attorney produced the testimony (which it turned out had been taken at Plattsburg, N. Y.), where in answer to questions propounded in that hearing the witness said:

"Q. Give me the names of any Chinese persons born in the United States which you know? A. I only remember two, Leong Chu and Leong Goom, the defendants in this case. Q. You don't know of any other Chinese persons born in the United States? A. No, sir."

He was confronted by applications made to the government for leave to embark for China. His signature is upon such papers. At first he admitted the signatures, and afterwards denied them, and claims to have gone to China twice, although it was claimed by the government that he went three times. The exhibition of the witness in relation to these applications, his contradiction in connection with his signature thereto, and his manner of testifying, is very unsatisfactory. After due allowance made for his age, the court cannot help but be influenced by his dealing in generalities in his testimony and inability to give specific knowledge of the subjects sought to be obtained by inquiry. His manner of testifying and conduct, his tremor, all indicate to my mind

that his evidence does not come up to the standard required to base a finding that this defendant was born in the United States.

It may be that the witnesses called as to the defendant's residence in the United States in later years are truthful, but that does not aid in the determination of whether or not he was born in the United States. It might be some corroboration, if there was satisfactory evidence that the defendant was born in the United States.

In addition, it appears that a statement was taken from the defendant at the time that he was being smuggled into the United States. His statements there are wholly at variance with the statements now made under oath before me as to events in his past life. The court should not be charged with even the decent curiosity of trying to find out on which occasion he was telling the truth, but was justified in rejecting his testimony as unworthy of belief, although Judge Lacombe did say in United States v. Moy Toom (D. C.) 224 Fed. 520 (decided in June, 1915):

"Examination of very many records in these cases had induced the conviction that it tends greatly to elucidate the truth to hear what the Chinese person has to say about such simple facts as his age, parentage, relationships, occupation, and localities where he has lived, and the circumstances attending his latest entry into this country, before his lawyer appears."

The burden of proof requirement, of the defendant showing affirmatively and satisfactorily his claim of right to be and remain in the United States, has been uniformly restated by the courts. Li Sing v. United States, 180 U. S. 486, 21 Sup. Ct. 449, 45 L. Ed. 634; Chin Bak Kan v. United States, 186 U. S. 193, 22 Sup. Ct. 891, 46 L. Ed. 1121; Ah How v. United States, 193 U. S. 65, 24 Sup. Ct. 357, 48 L. Ed. 619; United States v. Too Toy (D. C.) 185 Fed. 838; United States v. Hom Lim (D. C.) 214 Fed. 456; Lee Sim v. United States, 218 Fed. 432, 134 C. C. A. 232. Judge Hough in United States v. Yee Tun (unreported but affirmed on appeal), laid down a rule which should be approved when he said:

"In this case the burden normally cast upon a Chinese person of proving his right to remain in the United States is increased by the surreptitious method of his attempted entry." [Decree affirmed 228 Fed. 1023, —— C. C. A. ——.]

And in the case of United States v. Lee Low You:

"In my judgment the action of the appellant in trying to enter as he did materially increased the burden cast upon him. In order to succeed he must show by clear and convincing evidence that that is true which he was afraid to urge until he was obliged to do it as a last resort." [Judgment affirmed 230 Fed. 820, —— C. C. A. ——.]

Applying these rules of law to the testimony disclosed on this hearing, I must find that this burden of proof the defendant has not sustained. An order will therefore be made directing his deportation to China under the Chinese Exclusion Act.